UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JOHN DOE                                          :
                                                  :
V.                                                :       Case No. 18-106-JJM-LDA
                                                  :
JOHNSON & WALES UNIVERSITY                        :

**DEFENDANT'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS
COUNTS III-VII OF PLAINTIFF'S COMPLAINT**

Defendant Johnson & Wales University ("JWU") submits its Memorandum in Support of its Motion to Dismiss Counts III, IV, V, VI, and VII (injunctive relief portion) of Plaintiff's Complaint.

**I.     Introduction**

Plaintiff challenges JWU's procedures relating to its investigation of allegations that John Doe sexually assaulted another student, Mary Smith, and adjudication of the sexual misconduct charges against him.  JWU disputes that any procedural error or contractual breach occurred, and it will prove its defenses as the litigation proceeds.  Because JWU must accept at the pleadings stage the truth of Plaintiff's factual allegations, JWU is not moving for the Rule 12(b)(6) dismissal of Plaintiff's two contract claims – Counts I and II alleging breach of contract and breach of the implied covenant of good faith and fair dealing.  Even accepting the truth of the Complaint's factual allegations, Plaintiff has failed to plead plausible claims under Title IX (Count IV) and his three non-contractual state law causes of action (Counts III, V, and VI).  Also, Plaintiff's claim for injunctive relief in Count VII is procedurally improper.

In his Title IX cause of action, Plaintiff fails to specify the nature of his claim.  The Court has recognized that a plaintiff may pursue a Title IX challenge of disciplinary proceedings under two theories - erroneous outcome and selective enforcement.  Doe v. Brown Univ., 166 F. Supp.

3d 177, 185 (D.R.I. 2016) (C.A. No. 15-144-S).  Whether Plaintiff seeks to litigate under either theory or both, his allegations of procedural errors are devoid of the necessary showing of intentional gender discrimination to support a Title IX claim.  Plaintiff has an obligation to plead sufficient facts from which an inference of gender bias can be drawn, and he has failed to do so.

Plaintiff's quasi-contractual claim and two tort claims fail as a matter of law.  Plaintiff's promissory estoppel claim is improper because the university-student relationship is contractual, and a quasi-contractual claim may only stand in the absence of a contract.  Regarding Plaintiff's claim of intentional infliction of emotional distress, he has not pled any specific physical symptomatology as required under Rhode Island law.  Also, courts nationally have dismissed intentional infliction of emotional distress claims in student lawsuits challenging a university's sexual misconduct disciplinary processes, recognizing the institution's obligation under Title IX to investigate and respond to sexual misconduct complaints.  Plaintiff's claim of negligent infliction of emotional distress does not fall within the tort's limited scope under Rhode Island law.

In Count VII, Plaintiff's claim for an injunction is not a standalone cause of action.  While an injunction may be sought as a prayer for relief, it should not be pled as a separate count.

**II.     Plaintiff's Complaint**

For purposes of this motion to dismiss, it is not necessary to recount in detail what Plaintiff's Complaint alleges.  Plaintiff's Complaint traces JWU's process from its receipt in June 2017 of a report that John Doe sexually assaulted Mary Smith through the completion of its disciplinary adjudication in November 2017.  Plaintiff's chronology and allegations of

procedural errors support only his contractual claims. JWU's motion concerns the pleading deficiencies and omissions that are fatal to all of Plaintiff's other causes of action.

### III. Standard of Review

In its adjudication of a Rule 12(b)(6) motion, the Court "must assume the truth of all well-pled facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F. 3d 1 (1st Cir. 2007). "To avoid dismissal, a complaint must provide a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Garcia-Catalan v. United States, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). "At the pleading stage, the plaintiff need not demonstrate that [he] is likely to prevail, but [his] claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" Id. at 102-03 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 478, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). A complaint that states "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not suffice. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). While a complaint needs only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

### IV. Argument

#### A. Plaintiff Has Not Pled a Plausible Title IX Claim.

##### 1. Plaintiff Must Plead Intentional Gender Discrimination.

Nationally, cases have been filed under Title IX in which a male student asserts that a school's response to a sexual misconduct complaint was biased against the accused student because of his gender. Doe v. Brown Univ., 166 F. Supp. 3d at 180-81. As the Court has noted,

"[i]n Yusuf [v. Vassar Coll. 35 F.3d 709, 715 (2d. Cir. 1994)], the Second Circuit developed a framework for cases attacking university disciplinary proceedings on the ground of gender bias, which fall into two categories - 'erroneous outcome' and 'selective enforcement.'"  35 F.3d at 715.  "Although the First Circuit has not directly confronted the issue, district courts in the First Circuit have looked to the framework established in Yusuf, subject to the heightened pleading standard set forth in Twombly and Iqbal."  Id. (citing Doe v. Univ. of Mass.-Amherst, No. CV 14-30143-MGM, 2015 WL 4306521, at *8 (D. Mass. July 14, 2015), appeal dismissed sub. nom. Doe v. Univ. of Mass. (July 28, 2015)).[1]

Under each theory, Plaintiff must plead that the alleged conduct was motivated by intentional gender bias.  20 U.S.C. § 1681(a) (prohibiting discrimination "on the basis of sex"); see Yusuf, 35 F. 3d at 715; see also Mallory v. Ohio Univ., 76 F. Appx 634, 638 (6th Cir. 2003) ("In Yusuf, the Second Circuit, analogizing from Title VII law, categorized Title IX claims against universities arising from disciplinary hearings into 'erroneous outcome' claims and 'selective enforcement' claims, both of which require a plaintiff to demonstrate that the conduct of the university in question was motivated by a sexual bias."); Doe v. Univ. of St. Thomas, 240 F. Supp. 3d 984, 990 (D. Minn. 2017) (same); Sarvanan v. Drexel Univ., No. 17-3409, 2017 WD 4352243, at *7 (E.D. Pa. Oct. 10, 2017) (same); Doe v. The Trustees of the Univ. of Pa., No. 16-5088, 2017 WL 4049033, at *18 (E.D. Pa. Sept. 13, 2017) (same).

---

[1]  The First Circuit has under advisement a male plaintiff's appeal of a judgment entered by the United States District Court of Massachusetts in Doe v. Trs. of Boston Coll., No. 15-cv-10790, 2016 WL 5799297 (D. Mass. Sept. 10, 2016), appeal docketed, 16-2290 (1st Cir. Oct. 26, 2016).  The appeal includes the plaintiff's challenge of the trial court's grant of summary judgment regarding a Title IX erroneous outcome claim.  Oral argument occurred on July 26, 2017.

As the Court has also held, a Title IX claim may not be premised on an alleged "disparate impact" a policy has with respect to a protected group. Doe v. Brown Univ., 166 F. Supp. 3d at 184 (citing Doe v. Columbia Univ., 101 F. Supp. 3d 356, 367 (S.D.N.Y. 2015)). "Therefore, '[i]t is not enough to show that a policy or practice disproportionately affects one sex'; instead 'a plaintiff must ultimately show that the defendant discriminated against him or her because of sex; that is the discrimination was intentional; and that the discrimination was a 'substantial' or 'motivating factor' for the defendant's actions.'" Id. at 185 (citations omitted) (emphasis in original).

### 2. Plaintiff Has Not Pled a Plausible Erroneous Outcome Claim.

To state an "erroneous outcome" claim, a plaintiff must show the following:

> [Under the erroneous outcome theory], "the claim is that the plaintiff was innocent and wrongly found to have committed the offense." Yusuf, 35 F.3d at 715. A plaintiff making an erroneous outcome claim must first "allege particular facts to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." Id. Once the plaintiff has cast some articulable doubt concerning the accuracy of the proceeding, they must next "allege particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." Id. (citations omitted). The Yusuf court noted that "[s]uch allegations might include, *inter alia*, statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." Id.

Doe v. Brown Univ., 166 F. Supp. 3d at 185. Even assuming that Plaintiff has pled sufficient allegations to establish doubt concerning the accuracy of JWU's disciplinary result, he has not pled anything to support the necessary causation prong of the erroneous outcome analysis – showing "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." Yusuf, 35 F.2d at 715.

Plaintiff's Title IX count states only generalized allegations that JWU's procedural decisions and actions were "motivated" by gender bias. See Count IV, ¶¶ 81-101.[2] "[B]are averments of motive are not sufficient to survive a motion to dismiss even when the standard of review, which favors Plaintiff is stretched to the limits." Doe v. Western N.E. Univ., 228 F. Supp. 3d 154, 188 (D. Mass. 2017).

Regarding the pleading requirements for an erroneous outcome claim, courts have ruled that allegations of procedurally flawed proceedings coupled with just conclusory allegations of gender discrimination cannot survive a motion to dismiss. See Doe v. Purdue Univ., No. 2:17-cv-33-PRC, 2017 U.S. Dist. LEXIS 188728, at * 43 (N.D. Ind. Nov. 15, 2017) ("Although Plaintiff attacks the procedural protections afforded him during the disciplinary process and generally alleges that those procedures demonstrate bias, Plaintiff has not alleged any specific statements, conduct, or pattern of decision making suggestive of gender bias at Purdue as opposed to bias in favor of the victim of sexual assault."); Doe v. Univ. of St. Thomas, 240 F. Supp. 3d at 991 ("Regarding UST's alleged unbalanced questioning of Jane Doe (the complainant-victim) and Doe (the respondent-perpetrator), numerous courts have held that "[e]ven if [a] [u]niversity treated [a] female student more favorably than the [p]laintiff, during the disciplinary process 'the mere fact that [p]laintiff is male and [the alleged victim] is female does not suggest that the disparate treatment was because of [p]laintiff's sex.'") (quotation citations omitted); Sahm v. Miami Univ., 110 F. Supp. 3d 774, 778 (S.D. Ohio 2015) ("[d]emonstrating that a university official is biased in favor of the accused victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias

---

[2] There is a typographical error in the numbering of Count IV's allegations. The paragraphs are numbered 81-90 and 100-01. There are no paragraphs numbered 91-99.

against male students"); Doe v. Case Western Reserve Univ., Case No. 1:14CV2044, 2015 WL 5522001, at *5-6 (N.D. Ohio Sept. 16, 2015) (gender bias not shown by male plaintiff's allegations that a dean pressured a student to provide evidence against plaintiff, that plaintiff was not permitted to review evidence in developing a defense, and that plaintiff was denied the right to cross-examine the accuser); Doe v. Univ. of Mass.-Amherst, 2015 U.S. Dist. LEXIS 91995, at *26 (male plaintiff's allegations that there were "difficulties getting information, deficiencies in the investigation, limits placed on his ability to cross-examine witnesses, the exclusion of documentary evidence he wished to introduce, and the misuse of witness testimony by the hearing board" were insufficient to show gender bias).

Although John Doe believes that he was wrongly treated, his purely subjective assumptions about the fairness of the proceedings cannot support an erroneous outcome claim. See, e.g., Doe v. Western N.E. Univ., 228 F. Supp. 3d at 188 (allegations that the plaintiff felt "bullied" during the an investigator's questioning failed to raise a reasonable inference of gender bias); Doe v. Baum, 227 F. Supp. 3d 784, 817 (E.D. Mich. 2017) (finding that the "plaintiff has offered nothing more than an administrative decision by school officials with which he disagreed must have been due to 'gender bias' essentially because he is male, the complainant is female, and the decision was adverse to him") (quoting Doe v. Cummins, 662 Fed. Appx. 427, 452-53) (6th Cir. 2017)); Salau v. Denton, 139 F. Supp. 3d 988, 998 (W.D. Mo. 2015) (quoting Sahm v. Miami Univ., 2015 U.S. Dist. LEXIS 65864 (S.D. Ohio May 20, 2015)) ("One case by an individual who was subjectively dissatisfied with the result of a disciplinary proceeding does not constitute a pattern of decisionmaking.").

In cases in which courts have denied motions to dismiss Title IX erroneous outcome claims, the plaintiffs alleged facts in the form of specific statements or patterns of conduct which

plausibly suggested that gender bias motivated erroneous findings that male plaintiffs were responsible for sexual misconduct.  See Yusuf, 35 F. 3d at 715; Doe v. Brown Univ., 166 F. Supp. 3d at 189.  Specifically, in Brown University, the plaintiff's erroneous outcome claim survived dismissal based upon his allegations of purported statements by university employees that male students "were guilty, until proven innocent" and that the university had "loaded the dice against the boys."  Id.  Additionally, the plaintiff identified other sexual misconduct disciplinary cases where the university allegedly showed a gender bias against males.  Id.  Here, Plaintiff has not pled any similar allegations against JWU, and he has failed to meet his pleading obligation under the causation prong of the erroneous outcome analysis.

### 3.     Plaintiff Has Not Pled a Plausible Selective Enforcement Claim.

To plead a selective enforcement claim, a plaintiff must allege that "regardless of the student's guilt or innocence, the severity of the penalty and/or the decision to initiate the proceeding was affected by the student's gender."  Yusuf, 35 F.3d at 715.  In Yusuf, the Title IX selective enforcement claim was dismissed because there were no allegations that the university treated similarly situated members of the opposite sex – that it, members of the opposite sex facing comparable disciplinary charges – differently.  Id. at 716.

Without a judicial insistence on particularized factual allegations of selective enforcement, "every conclusory, selective enforcement claim would lead to discovery concerning the entire disciplinary history of a college and then to a confusing, unmanageable and ultimately incoherent retrial of every disciplinary decision, including decisions not to investigate."  Albert v. Carovano, 851 F.2d 561, 574 (2d Cir. 1988).  See also Ludow v. Nw. Univ., 125 F. Supp. 3d 783, 793 (N.D. Ill. 2015) (dismissing claim because plaintiff failed to allege "that a female [] would have been treated more favorably in the same circumstance"); Doe

v. Univ. of Mass.-Amherst, 2015 WL 4306521, at *9 (dismissing selective enforcement claim because the plaintiff did not plead "facts from which a plausible inference of gender bias can be drawn . . . and indicating male and female students accused of sexual harassment are treated differently by the university in terms of the way complaints are pursued or discipline is imposed"); Sahm v. Miami Univ., 110 F. Supp. 3d at 779 (dismissing Title IX claim because the plaintiff asserted "no facts to suggest that [the University] would have treated a female accused of sexual assault any differently in her investigation or that the University would have acted differently in a disciplinary procedure against a female accused of sexual assault.").

Doe cannot support a selective enforcement claim against JWU to the extent that his generalized allegations seek to imply that sexual misconduct cases are brought typically against male students. As courts have held consistently, such a blanket contention does not support a reasonable inference that a university treats males differently, particularly because a university does not control the gender of students who file sexual misconduct complaints. See Austin v. Univ. of Or., 205 F. Supp. 3d 1214, 1223-26 (D. Or. 2016) (dismissing Title IX selective enforcement claim because "conclusory allegations of a pattern of enforcement against males alone does not give rise to an inference of sex discrimination"); Prasad v. Cornell Univ., No. 5:15-CV-322, 2016 WL 3212079, at *18 (N.D.N.Y. Feb. 24., 2016) (rejecting a selective enforcement claim where plaintiff alleged that sexual misconduct claims were disproportionately "lodged by females against males"); Doe v. Regents of the Univ. of Cal., 215CV02478SVWJEM, 2016 WL 5515711, at *5 (C.D. Cal. July 25, 2016) (finding that higher rate of sexual assault complaints "filed by women against men" does not "indicate[] discriminatory treatment of males accused of sexual assault"); Rolph v. Hobart & William Smith Colleges, No. 6:16-CV-06515 EAW, 2017 WL 4174933, at *12 (W.D.N.Y. Sept. 20, 2017)

(rejecting selective enforcement claim because complaint conceded that "women rarely, if ever, are accused of sexual harassment by the Colleges . . . which suggests that a similarly-situated comparator may not exist.").

Nothing in Plaintiff's Title IX allegations plausibly supports a selective enforcement claim. Moreover, Plaintiff has not alleged that JWU would have treated a female student differently than him under similar investigatory and disciplinary circumstances. Therefore, a selective enforcement claim fails as a matter of law.

> **B. Plaintiff's Quasi-Contractual and Tort Claims Fail as a Matter of Law**
>
> **1. A Promissory Estoppel Claim is Not Plausible Where There is a Contractual Relationship Between the University and the Student.**

Under the doctrine of promissory estoppel, a court will enforce an agreement that does not meet the formal requirements of a contract if there was a clear and unambiguous promise, reasonable and justifiable reliance upon that promise, and a detriment caused by reasonable reliance on the promise. Filippi v. Filippi, 818 A.2d 608, 626 (R.I. 2003). "[T]he existence of a valid contract governing the subject matter generally precludes recovery in quasi contract for events arising out of the same subject matter." R & B Elect. Co. v. Amco Const. Co., Inc., 471 A.2d 1351, 1355 (R.I. 1984)).

In Brown University, the Court dismissed a promissory estoppel claim because "the student-university relationship is governed by contract, which includes the reasonable expectations of the students based on the Code." 166 F. Supp. 3d at 196. The same result should be reached here, where John Doe and JWU had a contractual relationship.

### 2. Plaintiff Has Not Pled a Plausible Claim for Intentional Infliction of Emotional Distress.

Under Rhode Island law, to maintain an action for intentional infliction of emotional distress, a plaintiff must establish the following elements: (1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe. Champlin v. Washington Trust Co. of Westerly, 478 A.2d 985, 989 (R.I. 1984). In addition, the Rhode Island Supreme Court has determined that a plaintiff must also provide proof of medically established physical symptomatology. Vallinoto v. DiSandro, 688 A.2d 830, 838-40 (R.I. 1997).

Count V does not plead any physical symptomatology that Plaintiff has allegedly suffered. Elsewhere in the Complaint, Plaintiff merely alleges that he has suffered "physical" damages. Compl. at ¶ 101. Even if this generalized allegation is accepted, Plaintiff's intentional infliction of emotional distress claim still must be dismissed because JWU's alleged conduct was not "extreme and outrageous."

Whether a defendant's actions are sufficiently "extreme and outrageous" to meet the threshold for imposing liability is a question of law for the court. Clift v. Narragansett Television, L.P., 688 A.2d 805, 813 (R.I. 1996). To define the degree of "extreme and outrageous" conduct, the Rhode Island Supreme Court has adopted the standard set forth in the Restatement (Second) *Torts* § 46 (1965). Hoffman v. Davenport-Metcalf, 851 A.2d 1083, 1098 (R.I. 2004). Liability may lie only where "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. at 1090 (citations omitted). Significantly for purposes of this motion, "[i]it [is] for the Court in the first instance to determine

whether the defendant's alleged conduct, set out in the complaint, could reasonably be so extreme and outrageous" to result in liability. Clift, 688 A.2d at 813. Described as a very high standard, it is not enough "that [the defendant] acted with an intent which is tortious or even criminal, or that [the defendant] has intended to inflict emotional distress[.]" Hoffman, 851 A.2d at 1089, n.6.

Nationally, courts have dismissed intentional infliction of emotional distress claims relating to university sexual misconduct disciplinary processes. See Doe v. Coll. of Wooster, 243 F. Supp. 3d 875, 896 (N.D. Ohio 2017) ("Because it is undisputed that Wooster took the action it did against plaintiff in response to a claim of sexual assault lodged by another student, the alleged conduct in this case fails to meet this demanding standard [to show extreme and outrageous behavior]"); Doe v. Brandeis Univ., Civil Action No. 15-11557-FDS, 2016 WL 1274533, at *45 (D. Mass. Mar. 31, 2016) (holding that despite the apparent unfairness and unreasonableness of the university's actions, the facts in the complaint did not constitute the "targeted, deliberate, and malicious conduct that is required for an IIED claim."); Harris v. St. Joseph's Univ., Civil Action No. 13-3937, 2014 WL 1910242, at * 11-12 (E.D. Pa. May 13, 2014) (holding that the complaint "fail[ed] to satisfy the requisite outrageous conduct for such a claim" despite allegations that plaintiff was falsely portrayed as a "'cruel sex offender'"); Fellheimer v. Middlebury Coll., 869 F. Supp. 2d 246-47 (D. Vt. 1994)). ("A College's decision, when confronted with a female student's accusation of rape, to confront the male student with charges, hold a hearing, and support the findings of the initial tribunal on appeal, even where various procedural errors are alleged, cannot form the basis of an intentional infliction of emotional distress claim.").

Plaintiff has not alleged sufficient facts to meet his extremely high burden to show that JWU's alleged conduct was extreme and outrageous, particularly in light of the university's obligations under Title IX to respond to a sexual misconduct complaint. Plaintiff's claim for intentional infliction of emotional distress should be dismissed.

### 3. Plaintiff's Negligent Infliction of Emotional Distress Claim is Not Permitted Under Rhode Island Law.

Under Rhode Island law, a claim for negligent infliction of emotional distress is limited to two groups of plaintiffs. Doe. v. Brown Univ., C.A. No. 16-562-S, 2018 WL 443504, at * 5 (D.R.I. Jan. 16, 2018) (citing Perroti v. Gonicberg, 877 A.2d 631, 636 (R.I. 2005) ("Only two groups of plaintiffs are able . . . to seek recovery under a theory of negligent infliction of emotional distress: those within the 'zone of danger' who are physically endangered by the acts of a negligent defendant, and bystanders related to a victim whom they witness being injured."). Because Plaintiff is not within either group, his claim for negligent infliction of emotional distress should be dismissed.

### C. An Injunctive Relief Claim is not a Standalone Cause of Action.

A request for an injunction must be pled among the Complaint's prayers for relief, not as a separate count in a pleading. Doe v. Brown Univ., 166 F. Supp. 3d at 197. Count VII's claim for an injunction should be dismissed, without prejudice to Plaintiff's right to seek an injunction among his remedies.[3]

---

[3] Plaintiff's Count VII also pleads a declaratory judgment claim, which may remain in the Complaint because Plaintiff's Complaint will not be dismissed in its entirety. Doe v. Brown Univ., 166 F. Supp. 3d at 197.

## V.      Conclusion

JWU requests that the Court dismiss Counts III-VI of Plaintiff's Complaint and Count VII as it relates to the claim for injunctive relief.

Defendant,
Johnson & Wales University,
By its Attorneys,

/s/ Steven M. Richard
/s/ Jeffrey S. Brenner
Steven M. Richard (4403)
Jeffrey S. Brenner (4359)
NIXON PEABODY LLP
One Citizens Plaza, 5th Floor
Providence, RI  02903
Tel:    (401) 454-1020
Fax:    (401) 454-1030
Email: srichard@nixonpeabody.com
       jbrenner@nixonpeabody.com

Dated:   March 19, 2018

CERTIFICATE OF SERVICE

I hereby certify that, on March 19, 2018, I served this memorandum upon Plaintiff's counsel electronically through the Court's CM/ECF system

/s/ Steven M. Richard