UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOHN DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 18-cv-106-JJM-LDA |
| JOHNSON & WALES UNIVERSITY, | ) |
| | ) |
| Defendant | ) |
| | ) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS**

Now comes the Plaintiff John Doe ("Doe"), by counsel, and respectfully opposes the Motion to Dismiss ("Motion") filed by Defendant Johnson & Wales University ("JWU"). The Motion seeks the dismissal of Counts III (Estoppel and Reliance), IV (20 U.S.C. § 1681 – Title IX), V (Intentional Infliction of Emotional Distress), VI (Negligent Infliction of Emotional Distress) and VII (injunctive relief portion) of Doe's Complaint.[1] In support of this Opposition, Doe states the following:

**Introduction**

Doe's Complaint arises from the actions taken by JWU against Doe in October and November of 2017. In the Fall of his junior year he was accused of having committed sexual assault, when as a sophomore, he had engaged numerous times in consensual sex with a female student, Mary Smith, who suddenly now claimed to have withdrawn her consent during the

---

[1] The Motion does not seek the dismissal of Counts I (Breach of Contract) and II (Breach of Covenant of Good Faith and Fair Dealing) of the Complaint or the Declaratory Judgment portion of Count VII.

1

course of the sexual conduct. In just five weeks from the date the complaint by Mary Smith was filed against him with JWU, Doe was found guilty of sexual assault, expelled from JWU, removed from the campus and branded a sex offender, with his future in ruins.

JWU's actions against Doe were the direct result of a foundationally flawed and biased process of investigation and discipline in which Doe was denied the most basic elements of fairness promised to him by JWU in its Student Handbook and as required by law. For purposes of general efficiency, Doe will not repeat every fact delineated in Doe's Complaint and refers this Honorable Court to that Complaint.

Doe in his Complaint and its attached exhibits lays out with sufficient specificity the facts and actions taken by JWU which give rise to the claims in his lawsuit. He not only explains the failures in process but the inherent gender bias in that process.

**Standard of Review**

The First Circuit Court of Appeals has stated that a party "by seeking dismissal under Rule 12(b)(6), subjected itself to rigorous standards. We may affirm dismissal 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); see also Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Circ. 1990)." Rosa v. Park West Bank & Trust Co., 214 F.3d 213, 215 (1st Circ. 2000). Further, any ruling under Rule 12(b)(6) "must assume the truth of all well-pled facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1 (1st Circ. 2007).

### **Title IX (Count IV – 20 U.S.C. § 1681) is Sufficiently Pled**

JWU does not make any attempt in its Motion to argue that Doe's Complaint fails to make sufficient allegations to establish claims concerning the fairness and failed due process of JWU's disciplinary procedure against Doe. The main argument JWU asserts in support of its attempt to have Count IV dismissed is that Doe's Complaint fails to state allegations which implicate a biased motivation based in part on gender.

JWU's argument must fail because it simply does not account for current case law and the facts of the Complaint. Doe directly states that the actions were based in part on his gender, lays out in great detail the procedural deficiencies in his discipline process and states specifically that the training procedures of the JWU Title IX officials and panelists are designed to be inherently biased against males.

JWU relies in heavy part on the case of Doe v. Brown University, 166 F. Supp. 3d 177 (D.R.I 2016) ("Doe v. Brown").[2] In that case, the Honorable Rhode Island District Court laid out in detail its belief that a Title IX challenge of disciplinary proceedings may be pursued under two theories – erroneous outcome and selective enforcement. Guiding this reasoning was the framework of the Second Circuit Court of Appeals in Yusuf v. Vassar Coll., 35 F.3d 709 (2nd Circ. 1994) in conjunction with Doe v. Columbia Univ., 101 F. Supp. 3d 356 (S.D.N.Y. 2015).

In Doe v. Brown, Brown University sought dismissal of Doe's Title IX claims for substantially the same reasons sought in the current case, namely that enough facts were pled to show an unfair and improper disciplinary process but not enough to show gender-based bias as a part motivating factor. The District Court ruled against Brown University and in favor of Doe

---

[2] The Defendant's counsel in the current above captioned case was also the defense counsel in the Doe v. Brown Univ. case.

stating that, "In sum, the Court is not convinced as Brown would have it that the type of allegation found to be sufficient in Yusuf — that male students accused of sexual assault are 'invariably found guilty, regardless of the evidence, or lack thereof,' 35 F.3d at 716 — is now insufficient under Iqbal and Twombly absent some smoking gun evidence set forth in the complaint. As the court in Yusuf noted, '[s]imilar allegations, if based on race in employment decisions, would more than suffice in a Title VII case.' Id. Requiring that a male student conclusively demonstrate, at the pleading stage, with statistical evidence and/or data analysis that female students accused of sexual assault were treated differently, is both practically impossible and inconsistent with the standard used in other discrimination contexts." Doe v. Brown University, 166 F. Supp. 3d at 189.

Notably, after the ruling in favor of Doe in Doe v. Brown, the 2nd Circuit Court of Appeals *overturned* the Doe v. Columbia Univ. *District Court's* allowance of Columbia's Motion to Dismiss and promulgated in essence an expanded framework merging procedural rights in Title VII cases with Title IX cases. Specifically, in Doe v. Columbia University, 831 F.3d 46 (2nd Circ. 2016), the court imposed the same analytical framework delineated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) for Title VII (employment discrimination) cases for Title IX cases.  The 2nd Circuit wrote that, "In other words, at the 12(b)(6) stage of a Title VII suit, allegation of facts supporting a minimal plausible inference of discriminatory intent suffices as to this element of the claim because this entitles the plaintiff to the temporary presumption of *McDonnell Douglas* until the defendant furnishes its asserted reasons for its action against the plaintiff… We therefore hold that the temporary presumption afforded to plaintiffs in employment discrimination cases under Title VII applies to sex discrimination plaintiffs under Title IX as well.

Thus, a complaint under Title IX, alleging that the plaintiff was subjected to discrimination on account of sex in the imposition of university discipline, is sufficient with respect to the element of discriminatory intent, like a complaint under Title VII, if it pleads specific facts that support a minimal plausible inference of such discrimination." 831 F.3d at 55-56.

In the Doe v. Brown case, this Honorable Rhode Island District was hesitant to follow the guidance of the court in Doe v. Columbia Univ., 101 F. Supp. 3d 356 (S.D.N.Y. 2015) and instead denied Brown University's Motion to Dismiss by finding a middle ground between the reasoning of Doe v. Columbia Univ. and the reasoning of Yusuf v. Vassar Coll., 35 F.3d 709 (2nd Circ. 1994). Caselaw has since continued to move in the direction indicated by the Rhode Island District Court of further protecting the rights of the accused in these Title IX cases involving facts similar to the current above captioned case.[3][4] The Second Circuit's 2016 Doe v. Columbia University case clearly advises that this Honorable Court deny the pending Motion to Dismiss.

*Doe's Complaint Contains Clear Factual Statements and Assertions of Erroneous Outcome and Gender Bias*

There is no doubt that Doe's Complaint delineates a plausible claim of an erroneous outcome from the disciplinary process. Indeed, JWU does not even attempt to dispute this in its Motion. JWU, among other things stated in Doe's lawsuit, failed to provide Doe with a copy of

---

[3] The United States Court of Appeals for the First Circuit has not yet directly confronted the issue of establishing a framework as the Second Circuit has in Doe v. Columbia University. That said, the First Circuit does currently have under advisement a male plaintiff's appeal of a summary judgment granted in favor of Boston College regarding a Title IX claim. The appeal is docketed as 16-2290 (1st Circuit Oct. 26, 2016). Oral argument occurred in the case in July of 2017 and no written opinion has yet been released. The underlying case is from the United States District Court in Massachusetts (No 15-cv-10790).

[4] Notably, it is possible that disparate impact is an evidentiary basis under Title IX in light of Doe v. Columbia University, 831 F.3d 46 (2nd Circ. 2016).

the 18+ page incident/complaint filed against him, never provided oral or written guidance as to how the Hearing would proceed, never informed him whether he could bring any evidence or witness, never informed him whether he could question any witnesses, whether he was allowed an opening or closing statement. Additionally, Doe was never given the names of the three Panelists who were going to adjudicate the "verdict" in his Hearing, never given the ability to utilize participating legal counsel during the Hearing and no record of the Hearing was allowed (thereby making an internal appeal nearly impossible). Importantly, JWU never provided the two exculpatory roommate witnesses at the Hearing and Doe was never able to question them, yet their exculpatory statements are in the JWU complaint report.

Doe's Complaint also provides a minimal plausible inference of discriminatory intent in that it specifically states that the conduct by JWU, including all the procedural failures summarized in the above paragraph and the Complaint, was discriminatory towards Doe "on account of his sex". Notably, the Complaint states that "it appears that JWU actually provides training which is inherently biased and teaches a belief that a female complainant almost always tells the truth. It is a training regime which is inherently unbalanced against the accused such as John Doe."[5] The Complaint also states specifically that, "Upon information and belief, nearly all JWU students

---

[5] The Complaint also specifically states that the Doe's attorney (the undersigned) "requested the training materials while handling John Doe's internal appeal and he was refused access to this information." The undersigned counsel specifically listed where he believed the training materials came from in his appeal documents but was refused confirmation.

punished though the CRP for sexual assault and or sexual harassment have been males."[6][7] Importantly, the Complaint further states that JWU took these actions against the male Doe "in a time of near viral hysteria regarding campus sexual assaults."

The 2nd Circuit made clear in its decision in Doe v. Columbia Univ. that "when the evidence substantially favors one party's version of a disputed matter, but an evaluator forms a conclusion in favor of the other side (without an apparent reason based in the evidence), it is plausible to infer (although by no means necessarily correct) that the evaluator has been influenced by bias." 831 F.3d at 57. Doe's Complaint in total lays out an overwhelming recitation of Doe's innocence of sexual assault or sexual misconduct with Mary Smith and, in turn, the bias underlying such decision. Doe's facts pleaded in the Complaint (which must be accepted in the light most favorable to Doe) support Doe's version.

The Complaint's delineation of facts depicts Mary Smith as an altogether willing participant. It denies that Doe coerced Mary Smith and asserts no evidence exists supporting the Hearing Panel's decision expelling him. The alleged fact that the Hearing panel "chose to accept an unsupported accusatory version over Plaintiff's, and declined even to explore the testimony of

---

[6] The Rhode Island District Court in the Doe v. Brown case specifically noted, in discussing the type of facts similar to those stated by Doe against JWU, that "One particular challenge in these types of cases is that the best information for discerning whether alleged discrimination was based on the plaintiff's gender as opposed to his status as an accused student is generally in the possession of the defendant: namely, what are the overall outcomes of such cases and, more specifically, how have cases been handled in which the accused student is female and/or the alleged victim is male?... Putting aside for the moment where and how a plaintiff would obtain the referenced data and analysis given the nonpublic nature of the underlying information, the type of evidence called for by the Columbia court is more akin to what would be required at summary judgment." 166 F. Supp. 3d at 187.

[7] See also Yusuf, 35 F.3d at 716: "The allegation that males invariably lose when charged with sexual harassment at Vassar provides a verifiable causal connection similar to the use of statistical evidence in an employment case."

Plaintiff's witnesses, if true, gives plausible support to the proposition that they were motivated by bias in discharging their responsibilities to fairly investigate and adjudicate the dispute." *Id.* at 57.

*April 4, 2011 U.S. Department of Education Dear Colleague Letter was Rescinded Prior to JWU's Disciplinary Hearing Against Doe*

Federal Courts and commentators have correctly noted that the massive increase in lawsuits by males accused of sexual assaults against colleges and universities arising from Title IX began as a direct consequence of the issuance of the April 4, 2011 Dear Colleague Letter from the U.S. Department of Education Office of Civil Rights. This Letter extorted colleges and universities to change the due process procedures for adjudicating claims of sexual assault under Title IX. If colleges did not comply, they were threatened with the loss of federal funds. The Letter ordered colleges and universities to lower the standard of findings from "clear and convincing" to "preponderance of evidence" and demanded an expedited timetable with no semblance of procedures seen in civil or criminal courts.

The court in <u>Doe. v. Brandeis Univ.</u>, 177 F. Supp. 3d 561, 572 (D. Mass 2016) stated that "Universities across the United States have adopted procedural and substantive policies intended to make it easier for victims of sexual assault to make and prove their claims and for the schools to adopt punitive measures in response. That process has been substantially spurred by the [2011] "Dear Colleague" letter. The goal of reducing sexual assault, and providing appropriate discipline for offenders, is certainly laudable. Whether the elimination of basic procedural protections – and the substantially increased risk that innocent students will be punished – is a fair price to achieve that goal is another question altogether."[8]

---

[8] See also KC Johnson & Stuart Taylor, *The Campus Rape Frenzy: The Attack on Due Process at America's Universities (*1st ed., 2017)

Of deep importance to this Honorable Court is the fact that the U.S. Department of Education rescinded the 2011 Dear Colleague Letter in September of 2017, *before* JWU began its biased disciplinary process against Doe. [9] This timing matters because the U.S. Department of Education and its Secretary specifically indicated concerns with bias and discrimination against males under the changes instituted with the 2011 Dear Colleague Letter. The Letter was rescinded in great part to end such gender bias. JWU never made any changes to its policies despite the withdrawal of the Letter and the bias concerns therein. JWU knowingly employed a system of bias when it went forward with the Hearing and procedures delineated in Doe's Complaint.

### Count III (Estoppel and Reliance) is Viable Claim at this Stage of the Litigation

JWU seeks the dismissal of Count III because it is grounded in promissory estoppel and reliance doctrines. JWU bases its request for dismissal on the assertion that the doctrine of promissory estoppel is only enforceable if a valid contract between the parties governing the subject matter does *not* exist. Impliedly, JWU is conceding that an enforceable contract does exist between Doe and JWU - this concession by JWU, of course, presumably buttresses and strengthens Doe's counts of Breach of Contract (Count I) and Breach of Implied Covenant of Good Faith and Fair Dealing (Count II).

Although Doe appreciates the support from JWU on Counts I and II, if the trier of fact or Court disagrees with the assertion of a valid contract, then the doctrines of promissory estoppel and reliance are clearly ripe and valid. Dismissal of Count III is premature at this stage of the litigation.

---

[9] See Stephanie Saul and Kate Taylor, *Betsy DeVos Reverses Obama-era Policy on Campus Sexual Assault Investigations*, NY Times, September 23, 2017 at A1.

### **Count V (Intentional Infliction of Emotional Distress) is a Viable Claim at this Stage of the Litigation**

JWU concedes that Doe does state in his Complaint that he has suffered "physical" damages. Admittedly, Doe does not go into detail as to the nature of the physical damages. The specific nature of the physical damage will, of course, need to be detailed before a trier of fact can make a determination of whether the claim for Intentional Infliction of Emotional Distress should lead to damages. But Doe has sufficiently pled the claim under notice pleading to allow the claim to move forward.

JWU also states that a Rule 12(b)6 dismissal of Count V is merited because the actions of JWU in handling and disposing of Doe's disciplinary process and Hearing cannot sufficiently meet the criteria and threshold of "extreme and outrageous". JWU is incorrect. In just five weeks Doe went from having an unblemished academic and disciplinary record to having a formal complaint filed against him, being found guilty of sexual assault, expelled from the University, removed from the campus and branded a sex offender, with his entire future in ruins. These things all happened because of the intentional actions taken by JWU. Is that "extreme and outrageous"? Yes.

### **Count VI (Negligent Infliction of Emotional Distress) is a Viable Claim at this Stage of the Litigation**

JWU asserts that Doe is not a valid plaintiff able to seek damages under Rhode Island law for negligent infliction of emotional distress because Doe was not in a "zone of danger" of the acts taken by JWU or a "bystander" of such acts. Doe concedes that he was not a bystander to the acts taken by JWU because he was the target and entire focus of such acts. If any physical

harm was to come about to anyone because of JWU acts, if was going to occur to Doe.  JWU is incorrect when it asserts that Doe is not a covered group.


### Count VII (Injunctive Relief and Declaratory Judgment) is Properly Claimed

JWU concedes that Doe's request for Declaratory Judgment is not part of its request for dismissal in its Motion.  JWU only seeks to dismiss the request for Injunctive Relief.

JWU's Motion states that, "a request for an injunction must be pled among the Complaint's prayers for relief, not as a separate count in a pleading."  Assuming *arguendo* that JWU is correct in that statement, it is not clear why the Injunctive Relief request should be dismissed.  The "Prayer for Relief" at the conclusion of Doe's Complaint specifically states as its *first* request for relief that this Honorable Court, "Enter the requested permanent injunction and declaratory judgment."  It would appear that JWU's request to dismiss the injunctive relief request is misplaced.


### LEAVE TO AMEND AS NECESSARY

Notwithstanding the foregoing, should this Honorable Court determine that any of Plaintiff John Doe's claims are not adequately pleaded, Doe respectfully asks that he be given leave to amend the Complaint as necessary.  Fed. R. Civ. P. 15(a)(2) states that "in all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."

Additionally, insofar as this action has been brought pursuant to 28 U.S.C.§ 1331 and 28 U.S.C. § 1332, this Honorable Court should retain Plaintiff John Doe's state law causes of action in the event *arguendo* that any related claim is dismissed.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court *deny* the Defendant's Motion to Dismiss, and for all other just and equitable relief.

Respectfully submitted,
JOHN DOE,
By his attorney,

__/s/ James P. Ehrhard_____
James P. Ehrhard, Esq., Mass. BBO #651797
Ehrhard & Associates, P.C.
250 Commercial Street, Suite 410
Worcester, MA  01608
(508) 791-8411
ehrhard@ehrhardlaw.com

Dated: April 16, 2018

## CERTIFICATE OF SERVICE

I, James P. Ehrhard, hereby certify that I served the above Opposition to the following parties on today's date via U.S. Mail postage prepaid if not noted as having received copies via ECF:

Jeffrey S. Brenner, Esq., VIA ECF

Steven M. Richard, Esq., VIA ECF

/s/ James P. Ehrhard_____
James P. Ehrhard, Esq.

Dated: April 16, 2018