UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOHN DOE : | |
| : | |
| V. : | Case No. 18-106-JJM-LDA |
| : | |
| JOHNSON & WALES UNIVERSITY : | |

**DEFENDANT'S REPLY MEMORANDUM IN RESPONSE TO PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO DISMISS COUNTS III-VII OF PLAINTIFF'S COMPLAINT**

Defendant Johnson & Wales University ("JWU") submits its Reply Memorandum in Response to Plaintiff's Objection to Defendant's Motion to Dismiss Counts III, IV, V, VI, and VII (injunctive relief portion) of Plaintiff's Complaint.

**I.   Standard of Review**

Regarding the Rule 12(b)(6) analysis, Plaintiff cites to the Second Circuit's decision in Doe v. Columbia University, 831 F.3d 46 (2d Cir. 2016), and requests that the Court apply a particularly deferential standard of review to test the sufficiency of his Title IX claim. However, the Second Circuit's analysis has not been universally accepted. In Doe v. Miami University, 882 F.3d 579 (6th Cir. 2018), the Sixth Circuit recently stated that, in Columbia University, the Second Circuit analogized Title IX claims to Title VII-employment discrimination cases and concluded that a complaint under Title IX "is sufficient with respect to the element of discriminatory intent . . . if it pleads specific facts that support a minimal plausible inference of such discrimination." Id. at 588 (quoting Columbia Univ., 831 F.3d at 56). The Sixth Circuit explained that the Second Circuit's "minimal plausible inference" standard "reduces the facts needed to be pleaded under Iqbal." Id. The Sixth Circuit held: "Whatever the merits of the Second Circuit's decision in Columbia University, to the extent that the decision reduces the pleading standard in Title IX claims, it is contrary to our binding precedent." Id. at 589.

4841-0792-6370.1

The First Circuit has not addressed the Rule 12(b)(6) standard to test the sufficiency of a pleading asserting a Title IX challenge to a disciplinary result. Regardless of whether the Court applies the established Iqbal standard or the Second Circuit's seemingly more relaxed standard, Plaintiff has not pled a plausible Title IX claim of intentional gender discrimination for the reasons stated in JWU's initial memorandum and supplemented below.

**II.     Argument**

   **A.     While Plaintiff's Opposition States for the First Time that He Seeks to Litigate a Title IX Erroneous Outcome Theory, His Complaint Fails to Pled the Required Showing of Intentional Gender Discrimination to Support Such a Claim.**

Not every adverse student conduct determination justifies the respondent suing a school under Title IX. As JWU argues in its initial brief, courts have scrutinized complaints closely to determine whether the pleading's factual, not boilerplate, allegations actually and sufficiently plead a plausible Title IX claim of intentional gender discrimination. While his Complaint is silent about the precise nature of his Title IX claim, Plaintiff now identifies for the Court and JWU that he wishes to litigate under an erroneous outcome theory. See Doe v. Brown Univ., 166 F. Supp. 3d 177, 185 (D.R.I. 2016) (C.A. No. 15-144-S) (analyzing the elements of and distinctions between Title IX erroneous outcome and selective enforcement theories in challenges of sexual misconduct disciplinary proceedings).

Solely for purposes of a Rule 12(b)(6) analysis, JWU acknowledges that Plaintiff has sufficiently pled the first required element of an erroneous outcome claim – "particular facts to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." Id. (citing Yusuf v. Vassar Coll., 35 F. 3d 709, 715 (2d Cir. 1994)). Plaintiff's Complaint, however, falls far short on the second element requiring a showing of causation – "particular circumstances

suggesting that gender bias was a motivating factor behind the erroneous finding." Id. (citing Yusuf).

Plaintiff's opposition states four points seeking to avoid the dismissal of his Title IX claim: (1) "the training procedures of the JWU Title IX officials and panelists are designed to be inherently biased against males" (Pl. Mem. at 3 & 6); (2) "[u]pon information and belief, nearly all JWU students punished through the [Conduct Review Process] for sexual assault and or sexual harassment have been males" (id. at 6-7); (3) "JWU took these actions against the male Doe 'in a time of nearly viral hysteria regarding campus sexual assaults;'" (id. at 7); and (4) the Department of Education's Office for Civil Rights ("OCR") revoked on September 22, 2017 its previously issued April 4, 2011 Dear Colleague Letter ("DCL") (id. at 8). JWU addresses each point below.

### 1. Plaintiff's Single Allegation About JWU's Training

Plaintiff's Complaint pleads no specific factual allegations describing how JWU's training of its hearing panelists purportedly resulted in any intentional gender discrimination in his disciplinary case. Paragraph 53 of the Complaint merely offers pure guesswork: "Upon information and belief, it appears that JWU actually provides training which is inherently biased and teaches a belief that a female complainant almost always tells the truth. It is a training regime which is inherently unbalanced against the accused such as John Doe."

Plaintiff correctly notes that, Doe v. Brown University, the Court allowed the plaintiff's erroneous outcome claim to survive dismissal based upon, in part, allegations pled "upon information and belief" and noted that most of the underlying information is in the hands of the university, not the student. 166 F. Supp. 3d at 187-90. In contrast to the pleading here, the Brown University plaintiff pled sufficient factual details of intentional gender discrimination in the totality of his complaint to buttress his contentions made "upon information and belief," as opposed to the

3

unsupported, generalized, and stand-alone assertion that Plaintiff makes here about JWU's training. Id.

Plaintiff's Complaint also differs significantly from the pleading at issue in Doe v. The Trustees of the University of Pennsylvania, 270 F. Supp. 3d 799, 816-817, 823 (E.D. Pa. 2017), where the court allowed an erroneous outcome claim premised in part upon a university's training materials to survive a Rule 12(b)(6) dismissal. In that case, the pleading stated specific factual allegations describing the actual training, which Plaintiff has not pled here.

### 2. Plaintiff's Allegation that All Respondents Are Male

As noted on page 9-10 of JWU's initial memorandum, courts have rejected at the Rule 12(b)(6) stage allegations similar to Plaintiff's claim that "nearly all JWU students punished through the [Conduct Review Process] for sexual assault and/or sexual harassment have been males." Compl. at ¶ 39. Plaintiff has not offered a single judicial ruling challenging or limiting the authority provided by JWU. Further, his contention, at best, would arguably apply only to a selective enforcement claim, not an erroneous outcome claim.

### 3. The "Viral Hysteria"

While referencing generally to a purported "viral hysteria" regarding sexual misconduct issues on campuses, Plaintiff fails to explain whether this purported national atmosphere may have reached JWU or how it may have had any impact on his disciplinary case. Plaintiff ignores that courts have rejected erroneous outcome claims similarly based upon an alleged general anti-male bias purportedly affected by public and/or governmental pressure. See, e.g., Doe v. Cummins, 662 F. App'x 437, 452 (6th Cir. 2016) (rejecting plaintiff's claim that university adopted male-biased sexual investigation procedures to appease the federal government); Doe v. Univ. of Colo., 2017 WL 2311209, at * 11 (D. Colo. May 26, 2017) ("pressure from the [] government to investigate

sexual assault allegations more aggressively – either general pressure exerted by the Dear Colleague Letter or specific pressure exerted by an investigation directed at the University, or both – says nothing about the University's alleged desire to find men responsible because they are men."). Regardless of the existence and extent of this purported "viral hysteria," Plaintiff has not pled any alleged specific actions or statements attributed to any JWU officials that support any plausible inference of intentional gender discrimination in his disciplinary case.

### 4. OCR's Withdrawal of the 2011 DCL

In Doe v. Colgate University, 2017 WL 4990629 (N.D.N.Y. Oct. 31, 2017), the Northern District of New York rejected the same argument that Plaintiff asserts regarding OCR's recent withdrawal of the 2011 DCL:

> Plaintiff directs that Court's attention to OCR's recently-issued Dear Colleague Letter, Letter from Candice Jackson, Assistant Sec'y for Civil Rights, U.S. Dep't of Educ. to Title IX Coordinators (Sept. 22, 2017) ("2017 DCL"). The 2017 DCL criticizes the 2011 DCL for recommending that schools establish sexual misconduct procedures that reduce protections for the accused and "are in no way required by Title IX law or regulation." 2017 DCL at 1. The 2017 DCL does not impact the Court's analysis of Plaintiff's Title IX claim. Plaintiff appears to rely on the 2017 DCL to argue that Colgate violated Title IX by conforming its [policies] to the 2011 DCL's less stringent procedural requirements . . . . However, the 2017 DCL's different interpretation of Title IX simply demonstrates that OCR can "from time to time change its interpretation" of a statute. Chevron, U.S.A., Inc. v. Nat. Resources Def. Council, 467 U.S. 837, 863 (1984). It does not mean that Colgate's compliance with the 2011 DCL, the governing interpretation of Title IX during the period relevant to this action, somehow violated Title IX.

Id. at *13. The same result should happen in this case.

### B. Plaintiff's Arguments Fail to Save his Quasi-Contractual and Tort Claims.

#### 1. Because a Contract Exists, Plaintiff's Promissory Estoppel Claim is Not Plausible.

The Court should apply its analysis in Doe v. Brown University, 166 F.3d at 196, where it dismissed the plaintiff's estoppel claim because the university-student relationship is contractual. JWU has acknowledged the legal existence of its contractual relationship with

5

Plaintiff and has not challenged his breach of contract claim at this pleading stage. Although a plaintiff may plead alternative causes of action, an alternative claim may not be implausible and legally futile. Plaintiff's estoppel claim fails because he and JWU had a contractual relationship during his enrollment.

### 2. Courts Have Routinely Denied Claims of Intentional Infliction of Emotional Distress Relating to Student Disciplinary Cases.

As JWU argues on pages 12-13 in its initial memorandum, courts have recognized the difficult and often vexing challenges facing universities in their investigation and adjudication of student-on-student sexual misconduct complaints, particularly in light of their obligations under Title IX to respond promptly and equitably to sexual assault or harassment complaints. Plaintiff's opposition essentially makes a boilerplate claim that his emotional distress claim should survive because he was expelled from JWU. This is not the law, and such reasoning would subject a university to an intentional infliction of emotional distress claim in likely every sexual misconduct case resulting in an expulsion. See, e.g., Shank v. Carleton Coll., 232 F. Supp. 3d 1110, 1114 (D. Minn. 2017) ("[The College's] conduct may have been inadequate or even 'clearly unreasonable' for Title IX, but there is a big difference between conduct that is clearly unreasonable and conduct that is utterly intolerable in a civilized society. Civilized societies tolerate a lot of unreasonable conduct.").

### 3. Plaintiff's Negligent Infliction of Emotional Distress Argument Misreads Rhode Island Law.

JWU's initial memorandum relies upon the Court's recent ruling in Doe. v. Brown University, C.A. No. 16-562-S, 2018 WL 443504, at * 5 (D.R.I. Jan. 16, 2018) (citing Perroti v. Gonicberg, 877 A.2d 631, 636 (R.I. 2005)), stating the limited group of plaintiffs who may pursue a claim for negligent infliction of emotional distress under Rhode Island law. "Only two groups

of plaintiffs are able . . . to seek recovery under a theory of negligent infliction of emotional distress: those within the 'zone of danger' who are physically endangered by the acts of a negligent defendant, and bystanders related to a victim whom they witness being injured."  Id.  While conceding that he was not a bystander, Plaintiff's memorandum jams "a square peg into a round hole" by claiming that he was somehow within "a zone of danger" during JWU's investigative and adjudicatory processes.  Plaintiff's assertion is nonsensical and contorts the limited legal scope of recovery that Rhode Island allows for this type of negligence claim.

### III.  Conclusion

For reasons stated in its initial memorandum and this reply memorandum, JWU requests that the Court dismiss Counts III-VI of Plaintiff's Complaint and Count VII as it relates to the claim for injunctive relief.

                                       Defendant,
                                       Johnson & Wales University,
                                       By its Attorneys,

                                        /s/ Steven M. Richard
                                        /s/ Jeffrey S. Brenner
                                    Steven M. Richard (4403)
                                    Jeffrey S. Brenner (4359)
                                    NIXON PEABODY LLP
                                    One Citizens Plaza, 5th Floor
                                    Providence, RI  02903
                                    Tel:   (401) 454-1020
                                    Fax:   (401) 454-1030
                                    Email: srichard@nixonpeabody.com
Dated:  April 17, 2018                       jbrenner@nixonpeabody.com

### CERTIFICATE OF SERVICE

I hereby certify that, on April 17, 2018, I served this memorandum upon Plaintiff's counsel electronically through the Court's CM/ECF system

                                        /s/ Steven M. Richard

4835-8763-3762.1