UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JOHN DOE,
      Plaintiff,

v.                                         C.A. NO.: 18-106-JJM-LDA

JOHNSON & WALES UNIVERSITY,
      Defendant.

## DECLARATION OF TIM BROWN

TIM BROWN, declares, pursuant to 28 U.S.C. § 1746, that the following is true and correct as of the date of this declaration:

1. I am employed by Johnson & Wales University ("JWU") as an Associate Instructor, College of Culinary Arts. I have been a JWU faculty member since August 2010. In addition to my teaching responsibilities, I have also served as a faculty advisor to our students, including incoming freshman and seniors on internships.

2. Before joining JWU, I held culinary positions outside of the United States in my native country of South Africa and the United Kingdom and in the United States beginning in the year 2000.

3. On October 20, 2017, I was one of the three panelists who presided at the student conduct hearing to address the charges against the individual identified in this matter as John Doe. Caitlin Codding and Elizabeth Zmarlicki were the other panelists.

4. Before the October 20, 2017, hearing, I presided as a panelist at several JWU student conduct board hearings dating back to prior academic years, which included hearings to address sexual harassment and/or sexual assault charges.

5. At the start of each academic year, JWU requires all student conduct hearing panelists to attend a training session, which is mandatory for both returning and new panelists. For

4853-1356-8405.1

the 2017-18 academic year, in August, 2017, I attended a three-hour training program on JWU's student conduct process presented by Marshall Lancey, Assistant Director of Student Conduct. At each training that I have attended, JWU has instructed panelists on how to conduct objective hearings in all cases.

6. Based upon the training that I have received from JWU, I have always understood that I must fairly consider each case without any predisposition or bias. I have never understood anything in my training to suggest that I should believe that a sexual assault occurred merely because a complaint was made or that I should believe one party to a complaint over the other party based on anything other than the evidence. I have never been trained or told by anyone at JWU that a female complainant almost always tells the truth, as John Doe wrongly alleges in paragraph 53 of his Complaint in this litigation.

7. Based upon my personal experiences as a hearing panelist, I can dispel any incorrect suggestion by John Doe that male respondents are invariably held responsible for sexual misconduct charges at JWU. Both before and after John Doe's October 20, 2017, hearing, I have presided on student conduct panels that have found male respondents to be not responsible for sexual misconduct charges.

8. Before the October 20, 2017, hearing to address John Doe's case, I did not know either John Doe or the complainant against him, known in this matter as Mary Smith. However, it is possible I could have exchanged casual greetings, in passing, with one or both of them, without necessarily knowing their names, although I have no specific recollection of that. As an Associate Instructor, College of Culinary Arts, I frequently exchanged such casual greetings, in passing, with students whose names I did not necessarily know.

9. Consistent with my training, I approached the October 20, 2017, hearing with an open mind and fully understood that I must base my decision upon the evidence.

2

4853-1356-8405.1

10. Before the start of the hearing, I reviewed independently the case file reporting the investigation conducted by JWU's Campus Safety & Security. I was given a full and adequate opportunity to review this file.

11. During the hearing, Betsy Gray, JWU's Director of Student Conduct and Programs, was present as the hearing officer to facilitate the hearing process and guide the panelists and students through each step. Ms. Gray did not suggest in any way the panel's formulation of our decision.

12. At the start of the hearing, Ms. Gray gave to each panelist copies of (i) JWU's Sexual Assault and Relationship Violence Policy, which states JWU's definitions of consent and sexual assault (JWU 1-4); (ii) JWU's Prohibited Discrimination and Harassment (including Sexual Harassment) Policy (JWU 5); (iii) "What is Sexual Harassment?" from the Prohibited Discrimination and Harassment Policy (JWU 6-7); and (iv) a Title IX guide prepared by JWU's Title IX office addressing JWU's policy definitions of consent and sexual assault and providing flowcharts for a decisionmaking process (JWU 8-20). I found the aforementioned flowcharts very helpful to my analysis.

13. During the hearing, John Doe sat in one room with his advisor, and Mary Smith sat in another room with her advisor. Each party was able to hear via a speakerphone connection the other party's statements and responses to panelist questions.

14. The panel heard opening statements from John Doe and Mary Smith. We met twice with John Doe and Mary Smith to ask probative questions about their interactions with one another, particularly regarding two alleged incidents of sexual intercourse in John Doe's dormitory suite on separate evenings—one in a bathroom and another in his bedroom. The panel met twice with each party to ensure that all of our questions were addressed and raise additional inquiries based

upon what we heard from each party. We focused carefully on whether and how each incident occurred and whether consent was given for either or both of the incidents.

15. The panel considered carefully the fact that John Doe and Mary Smith admitted that they had engaged in consensual sexual intercourse before the two evenings at issue.

16. Both students recalled that they were together during two evenings at issue. John Doe denied that the bathroom incident occurred during the first evening or that he put his hands around Mary Smith's neck during either evening. John Doe's descriptions of the two evenings were consistently vague, providing few factual details and not articulating how he obtained Mary Smith's consent for the bedroom intercourse on the second evening that he acknowledged to have occurred. Mary Smith articulated specific details describing the bathroom and bedroom incidents and clearly testified that John Doe did not have her consent for intercourse in the bathroom or to engage in intercourse after she withdrew her consent in his bedroom. Mary Smith described that John Doe placed his hands on her neck during both incidents and how uncomfortable his forceful conduct made her feel.

17. In my careful assessment of the parties' testimony, I found that Mary Smith was consistently more credible and responsive than John Doe. I found that the preponderance of the evidence showed that the incident in the bathroom occurred during the first evening and that Mary Smith did not consent to this intercourse initiated by John Doe in a forceful manner. I found that the preponderance of the evidence showed that while consent was initially given at the start of John Doe and Mary Smith's interaction in his bedroom during the second evening, Mary Smith expressly withdrew her consent and that John Doe did not respect her withdrawal of consent and proceeded with sexual intercourse in a forceful manner.

18. Throughout the hearing and despite the panelists' several inquiries to allow him to provide more responsive and specific answers, John Doe remained evasive and non-responsive to

4

4853-1356-8405.1

the panelists' questions and was unable to articulate specific facts supporting that he obtained Mary Smith's consent. More than once, he merely stated that she never told him that she was uncomfortable. By contrast, Mary Smith provided specific information that she did not consent to either of the two instances of sexual intercourse.

19. Promptly after the hearing, the panelists deliberated for a lengthy period of time. While I cannot recall the precise duration of our deliberations, we carefully examined all of the record evidence and our credibility assessments of the parties, recognizing the seriousness of the matter before us. Each of the three panelists participated actively in the deliberations and freely expressed our viewpoints. As we deliberated, we focused specifically upon JWU's policy definitions of consent, sexual harassment and sexual assault.

20. We concluded unanimously that the preponderance of the evidence showed that the two incidents of sexual intercourse occurred without Mary Smith's consent and that John Doe committed sexual harassment and sexual assault in violation of JWU's Code of Student Conduct.

21. I understand that John Doe alleges in this lawsuit that he was treated unfairly during the hearing because he is a male, which is untrue given the objective and careful consideration that the panel gave to the evidence and our decision. I am confident that we fairly presided, examined each party without any bias or predisposition, and reached the correct decision based upon the preponderance of the evidence. I attest under oath that I presided and deliberated with an open and fair mind at all times and that my interactions with the other two panelists convince me that they did the same.

I declare under the penalty of perjury that the foregoing is true and correct.

EXECUTED ON 14th MAY, 2019

_____
Tim Brown