UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

JOHN DOE,
        Plaintiff,

v.                                                C.A. NO.: 18-106-JJM-LDA

JOHNSON & WALES UNIVERSITY,
        Defendant.

## DECLARATION OF CAITLIN CODDING

CAITLIN CODDING, declares, pursuant to 28 U.S.C. § 1746, that the following is true and correct as of the date of this declaration:

1. I am employed by Johnson & Wales University ("JWU") as an Assistant Director of Residential Communities. Since March 2015, I have held this position within JWU's Department of Residential Life. My job responsibilities include the supervision of professional staff members and students residing in multiple residential properties, enforcement of university policies, the recruitment and training of residential assistants and other student employees, and the leading of initiatives to ensure that JWU's residential halls maintain a safe and healthy environment.

2. In 2007, I graduated Roger Williams University with a Bachelor of Arts, majoring in political science and modern foreign language. In 2011, I graduated from the University of South Carolina – Columbia with a Masters of Education, Higher Education and Student Affairs. I earned my Doctor of Education in April 2019 from JWU. My research focuses on Educational Leadership and Administration.

3. Before my employment at JWU, I worked at Indiana University of Pennsylvania as a Residence Director from September 2011 to March 2015 and as the Assistant Director of Housing Occupancy on an interim basis from April 2014 to July 2014. Among other experience,

I also had residence life work experience while a student at the University of South Carolina – Columbia, where I served as a Residence Hall Director and an Assistant Residence Life Coordinator for an honors residential hall. Throughout residential life employment from 2007, I served as an administrative conduct hearing officer in multiple matters.

4. On October 20, 2017, I was one of the three panelists who presided at the student conduct hearing to address the charges against the individual identified in this matter as John Doe. Tim Brown and Elizabeth Zmarlicki were the other panelists. While this was my first instance serving as a panelist in case raising sexual misconduct charges, I had received training from JWU to prepare me for my responsibilities.

5. In August, 2017, I attended a three-hour training program on JWU's student conduct process presented by Marshall Lancey, Assistant Director of Student Conduct, which included training on how to conduct objective hearings in sexual misconduct cases.

6. I understood from my training that I must fairly consider each case without any predisposition or bias. I did not understand anything in my training to suggest that I should believe that a sexual assault occurred merely because a complaint was made or that I should believe one party to a complaint over the other party based on anything other than the evidence. Contrary to what John Doe alleges this lawsuit, I was never trained or told by anyone at JWU that a female complainant almost always tells the truth.

7. Before the October 20, 2017 hearing, I did not know either John Doe or the complainant against him, known in this matter as Mary Smith.

8. Consistent with my training, I approached the October 20, 2017, hearing with an open mind and fully understood that I must base my decision upon the evidence.

4832-3502-2741.1

9. Before the start of the hearing, I reviewed independently the case file reporting the investigation conducted by JWU's Campus Safety & Security. I was given a full and adequate opportunity to review this file.

10. During the hearing, Betsy Gray, JWU's Director of Student Conduct and Programs, was present as the hearing officer to facilitate the hearing process and guide the panelists and students through each step. Ms. Gray did not suggest in any way the panel's formulation of our decision.

11. At the start of the hearing, Ms. Gray gave to each panelist copies of (i) JWU's Sexual Assault and Relationship Violence Policy, which states JWU's definitions of consent and sexual assault (JWU 1-4); (ii) JWU's Prohibited Discrimination and Harassment (including Sexual Harassment) Policy (JWU 5); (iii) "What is Sexual Harassment?" from the Prohibited Discrimination and Harassment Policy (JWU 6-7); and (iv) a Title IX guide prepared by JWU's Title IX office addressing JWU's policy definitions of consent and sexual assault and providing flowcharts for a decision making process (JWU 8-20).

12. During the hearing, John Doe sat in one room with his advisor, and Mary Smith sat in another room with her advisor. Each party was able to hear via a speakerphone connection the other party's statements and responses to panelist questions.

13. The panel heard opening statements from John Doe and Mary Smith. We met twice with John Doe and Mary Smith to ask probative questions about their interactions with one another, particularly regarding two alleged incidents of sexual intercourse in John Doe's dormitory suite on separate evenings—one in a bathroom and another in his bedroom. The panel met twice with each party to ensure that all of our questions were addressed and raise additional inquiries based upon what we heard from each party. We focused carefully on whether and how each incident occurred and whether consent was given for either or both of the incidents.

4832-3502-2741.1

14. The panel considered carefully the fact that John Doe and Mary Smith admitted that they had engaged in consensual sexual intercourse before the two evenings at issue.

15. Both students recalled that they were together during two evenings at issue. John Doe denied that the bathroom incident occurred during the first evening or that he put his hands around Mary Smith's neck during either evening. John Doe's descriptions of the two evenings were consistently vague, providing few factual details and not articulating how he obtained Mary Smith's consent for the bedroom intercourse on the second evening that he acknowledged to have occurred. Mary Smith articulated specific details describing the bathroom and bedroom incidents and clearly testified that John Doe did not have her consent for intercourse in the bathroom or to engage in intercourse after she withdrew her consent in his bedroom. Mary Smith described that John Doe placed his hands on her neck during both incidents and how uncomfortable his forceful conduct made her feel.

16. In my careful assessment of the parties' testimony, I found that Mary Smith was consistently more credible and responsive than John Doe. I found that the preponderance of the evidence showed that the incident in the bathroom occurred during the first evening and that Mary Smith did not consent to this intercourse initiated by John Doe in a forceful manner. I found that the preponderance of the evidence showed that while consent was initially given at the start of John Doe and Mary Smith's interaction in his bedroom during the second evening, Mary Smith expressly withdrew her consent and that John Doe did not respect her withdrawal of consent and proceeded with sexual intercourse in a forceful manner.

17. Throughout the hearing and despite the panelists' several inquiries to allow him to provide more responsive and specific answers, John Doe remained evasive and non-responsive to the panelists' questions and was unable to articulate specific facts supporting that he obtained Mary Smith's consent. More than once, he merely stated that she never told him that she was

uncomfortable. By contrast, Mary Smith provided specific information that she did not consent to either of the two instances of sexual intercourse.

18. Promptly after the hearing, the panelists deliberated for a lengthy period of time. While I cannot recall the precise duration of our deliberations, we carefully examined all of the record evidence and our credibility assessments of the parties, recognizing the seriousness of the matter before us. Each of the three panelists participated actively in the deliberations and freely expressed our viewpoints. As we deliberated, we focused specifically upon JWU's policy definitions of consent, sexual harassment and sexual assault.

19. We concluded unanimously that the preponderance of the evidence showed that the two incidents of sexual intercourse occurred without Mary Smith's consent and that John Doe committed sexual harassment and sexual assault in violation of JWU's Code of Student Conduct.

20. I understand that John Doe alleges in this lawsuit that he was treated unfairly during the hearing because he is a male, which is untrue given the objective and careful consideration that the panel gave to the evidence and our decision. I am confident that we fairly presided, examined each party without any bias or predisposition, and reached the correct decision based upon the preponderance of the evidence. I attest under oath that I presided and deliberated with an open and fair mind at all times and that my interactions with the other two panelists convince me that they did the same.

I declare under the penalty of perjury that the foregoing is true and correct.

EXECUTED ON May 15, 2019

*Caitlin Codding* (signature)
Caitlin Codding