UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| JOHN DOE[1] | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | C.A. No. 18-CV-00106-MSM-LDA |
|  | ) | |
| JOHNSON & WALES UNIVERSITY, | ) | |
| Defendant. | ) | |
|  | ) | |

**MEMORANDUM AND ORDER**

Mary S. McElroy, United States District Judge.

This matter comes before the Court on a Motion for Summary Judgment filed by defendant Johnson & Wales University ("JWU"), in a lawsuit claiming jurisdiction under both the diversity clause of 28 U.S.C. § 1332 and the federal question clause of 28 U.S.C. §1331. For the reasons that follow, I grant the Motion with respect to Counts IV (discrimination in education on the basis of gender, in violation of Title IX, 20 U.S.C. § 1681), and VI (negligent infliction of emotional distress). I deny the Motion with respect to Counts I (breach of contract) and II (breach of the covenant of good faith and fair dealing).

---

[1] This case was transferred from the District of Massachusetts, where the plaintiff is a resident and where it was originally filed. (ECF 22). Shortly thereafter, he was granted permission to pursue this lawsuit under the pseudonym of John Doe.

1

**BACKGROUND**

This complaint was filed by a former student at JWU who, in the fall of his junior year, was accused of having committed two sexual assaults on a fellow student approximately one year earlier in October 2016. According to the undisputed facts, Mary Smith[2] and Doe had had a romantic and sexual relationship in the Fall of 2016. During that relationship, they had slept together and engaged in consensual sexual intercourse in Doe's dormitory room on at least four occasions. On the fifth occasion, according to Smith, she was sleeping with Doe in his dormitory room, but awoke to use the bathroom; he followed her into the bathroom where they had intercourse. This time, however, she complained of pain and Doe, she alleges, refused to stop. The couple then returned to bed for the remainder of the night. Approximately a week later, the two had consensual intercourse again and again it caused her pain; they changed positions in an attempt to eliminate the pain but that was not successful. Smith claimed that Doe continued to complete the sex act until he ejaculated.

Eight or nine months later, around June 1, 2017, Smith's then-boyfriend B.K. reported to campus police that his girlfriend had been sexually assaulted by Doe. After campus police conducted a preliminary investigation, Smith said she did not want to proceed, and the matter was closed. Three months later, however, accompanied by B.K., Smith filed a formal complaint. Doe was charged, the University held a disciplinary proceeding, and he was ultimately expelled.

The conduct of the investigation and adjudication of that allegation form the basis of Doe's complaint in this Court. Doe maintains that the procedure was unfair and as such

---

[2] Also, a pseudonym. All students have been referred to by pseudonyms or initials by the parties and, therefore, by the Court.

violated his contractual right to a "fair" proceeding as granted him by the "Conduct Review Process," ("CRP") which is part of the JWU "Student Code of Conduct." ("SCC").[3] He also asserts that JWU's conduct in this case manifested gender discrimination in violation of Title IX and constituted negligent infliction of emotional distress. JWU maintains that it gave Doe all the rights he could reasonably expect under its process as described in the Conduct Review Process; it denies the allegations of discrimination and negligence.[4]

**THE DISCIPLINARY PROCESS**

Doe's complaint takes issue with specific parts of the proceedings, and from that platform alleges violations of state and federal law. In brief, he complains that:

1. he was never given a copy of what was an 18-page statement by Smith; it was read to him at a "Pre-Hearing Conference" shortly after he was charged and he was allowed, in the presence of another student whom he chose as his "advisor," to take notes. That is undisputed.
2. the process was not sufficiently explained to him, in that he was not told "how and if he could question any witnesses, bring any witnesses, bring and/or submit any evidence, whether there would be opening statements or closing statements." JWU asserts that Doe was adequately informed and that he was told at least twice he should ask questions if he did not understand something or wanted more information. Doe disputes that the explanation was adequate but does not dispute he was told he could call with questions.
3. he was allowed to listen to the adjudication panel's questioning of Mary Smith, but he was not allowed to question her or any witnesses. In JWU's description of the process, and the Affidavits of the panelists questioning the students (EFC 54, 55, 56), it is clear that while the panelists went back and forth between the two students twice, they did not ask Doe whether he had any questions he wanted propounded to Smith.

---

[3] The CRP provides, "The university administers the Conduct Review Process in good faith, making every reasonable effort to be fair to all involved." It also guarantees a resolution that is "prompt, fair and impartial."

[4] A number of counts were previously dismissed by this Court: Counts III (estoppel and reliance), V (intentional infliction of emotional distress), and VII (a prayer for injunctive relief as a separate cause of action).

3

4. the standard of proof was preponderance of the evidence.[5] JWU agrees.
5. the hearing was not transcribed, and no other record was made of it. JWU agrees.
6. his appeal should have been granted because there was new evidence of a post-incident Instagram posting by Smith. JWU contends this is not grounds for an appeal and that the evidence was not new.
7. JWU has conducted its disciplinary procedures in a gender discriminatory way. The factual assertions Doe makes in support of this contention are noted *infra* at n.11. JWU does not contest the specific facts Doe points to but maintains they do not demonstrate gender discrimination.

**STANDARD FOR SUMMARY JUDGMENT**

The standard for summary judgment is a familiar one and needs little elaboration here. The Court must examine the documents submitted by the parties to determine whether there exists a disputed issue of material fact. "Summary judgment is only proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Doe v. Trustees of Boston College*, 892 F.3d 67, 79 (1st Cir. 2018), quoting Fed.R.Civ.P. 56(a). My inquiry, therefore, is to determine, with respect to each surviving count of the complaint, whether there are material facts sufficiently in dispute that "a reasonable jury could resolve the point in favor of the nonmoving party." *Id.*, quoting *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 352 (1st Cir. 1992).

---

[5] In the CRP, the standard of proof is described as "more likely than not." Doe complains that this standard, whether phrased in terms of preponderance or likelihood, is too low.

4

**STATE LAW CLAIMS**

## COUNTS I AND II
## BREACH OF CONTRACT AND OF COVENANT OF GOOD FAITH

Both the breach of contract and breach of the covenant of good faith and fair dealing claims, in a diversity case, sound in state law. *Doe v Trustees of Boston College, supra* at 88 (applying Massachusetts law); *Crellin Technologies, Inc. v. Equipmentlease Corp.,* 18 F.3d 1, 4 (1st Cir. 1994) (applying Rhode Island law). JWU is a Rhode Island Corporation with campuses in several parts of the country, including Rhode Island and Massachusetts.[6]

The relationship between a student and a private university "is contractual in nature." *Gorman v. St. Raphael Acad.,* 853 A.2d 28, 34 (R.I. 2004). Accord, *Mangla v. Brown University,* 135 F.3d 80, 83 (1st Cir. 1998). These contracts have "unique qualities" that warrant deference to the flexibility of the institution to "properly exercise its educational responsibility." *Gorman, supra* at 34, quoting *Mahavongsanan v. Hall,* 529 F.2d 448, 450 (5th Cir. 1976). That same deference excuses "strict adherence to contract law." *Gorman, supra*

The contract that is relevant here is JWU's "Student Code of Conduct," which includes the JWU "Conduct Review Process." It is that process that led to Doe's expulsion. The Student Code of Conduct, like a student handbook, forms part of the overall contract between the student and university and "can be a source of the terms defining the reciprocal rights and obligations of a school and its students." *Gorman, supra* at 34. In construing terms of the contract between students and universities courts look to, among other things, the student

---

[6] The parties have addressed the state law claims under Rhode Island law, and I will do the same. *See, Fashion House, Inc. v. K mart Corp,* 892 F.2d 1076, 1080 (1st Cir. 1989) (Court honored parties' agreement to follow Michigan law).

5

handbook. *See Dinu v. President and Fellows of Harvard College.* 56 F.Supp.2d. 129, 130 (D. Mass 1999) (student handbook is one source of rights and obligations). The standard for interpreting the contractual terms contained in the "Conduct Review Process" is that of "'reasonable expectation—what meaning the party making the manifestation, the university, should reasonably expect the other party to give it.'" *Mangla v. Brown University, supra* at 83.

Turning to the "Conduct Review Process," that publication promises that JWU will adjudicate disciplinary complaints in a "fair" proceeding. While the plaintiff acknowledges that the process does not explicitly give him any of the rights he alleges were denied him (e.g., a right to a copy of the complaint, a right to question witnesses), he maintains that these and other entitlements are integral to a "fair" proceeding.[7]

"Fair" is not a term with a commonly accepted definition. It is conclusory: its precise meaning fluctuates with the context in which it is used.[8] Its meaning, particularly with respect to what components of an investigation and hearing process must be included in order to satisfy "fair," is thus open to interpretation. While the Court determines as a matter of law whether a contract term has a clear and unambiguous meaning, *Paul v. Paul*, 986 A.2d 989, 993 (R.I. 2010), it is up to the fact-finder to determine that meaning once the Court finds that the term is susceptible of more than one interpretation. *Botelho v. City of Pawtucket School Dept.,*

---

[7] JWU makes much of Doe's failure to address each of the University's assertions in its Statement of Undisputed Facts, and, citing *Schiffman v. United States*, No. 12-695, 2014 WL 1394199 at *1 (D.R.I. April 9, 2014), it demands that any factual allegations not specifically disputed be deemed admitted. But Doe makes his case for an unfair proceeding virtually entirely on facts put forth or acknowledged by JWU itself.

[8] For example, a determination of a "fair" price depends on factors not relevant to a determination of whether a particular punishment of a child for misbehavior is "fair."

130 A.3d 172, 176 (R.I. 2016) (a term is ambiguous when it is 'reasonably and clearly susceptible to more than one rational interpretation."); *Haviland v. Simmons*, 45 A.3d 1246, 1258 (R.I. 2012). When a term is ambiguous, its meaning becomes a "question of fact" for the jury. *Botelho* at 177-78. *See e.g., McBrayer v. Teckla, Inc.*, 496 F.2d 122, 126 (5th Cir. 1974), *reh. den.* 502 F.2d 1167 (whether financing was carried out in a "reasonable and businesslike manner" as required by the contract was question of fact for the jury); *Home Shopping Club, Inc. v. Miller Broadcasting, Inc.*, 982 F.Supp. 809, 811 (D.Kan. 1997) (where contract required plaintiff to "make available" certain programming time to defendant, jury was to decide what steps constituted "mak[ing time] available"); *Westinghouse Broadcasting Co., Inc. v. Dial Media, Inc.*, 410 A.2d 986, 991 (R.I. 1980) (what "best interest" meant in context of advertiser's obligation was a question of fact for the jury).

Whether Doe was entitled to the procedural protections he specifies depends on whether the guarantee of a "fair" proceeding would create a reasonable expectation that those aspects would be included.[9] *Doe v. Brown University*, 166 F.Supp. 3d 177, 191 (D.R.I. 2016), citing *Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 34-35 (1st Cir. 2007). I find that in the context of an uncounseled college junior, facing the frightening and very serious prospect of

---

[9] *Doe v. Trustees of Boston College*, No. 19-1871, ___ F.3d ___ (1st Cir. Nov. 20, 2019), presented a very different situation. The contract at issue there guaranteed "fundamental fairness" in the disciplinary proceeding. Agreeing that the contract governed the process to which Doe was entitled, and looking to state law, the Court noted that Massachusetts had a well-developed and extensive body of law defining the meaning of "fundamental fairness" in school disciplinary cases. Here, the word "fair" is not similarly clearly defined in Rhode Island law as it applies to a school disciplinary hearing and, therefore, its interpretation is a question for the jury. This Court does not seek to impose federal due process standards on this private university and its students; rather the issue here is a question of contractual interpretation and application. The current case also occurs in a fundamentally different procedural context. In *Doe* the plaintiff had to demonstrate probability of success in order to prevail on his motion for a preliminary injunction.

possible expulsion from school, in a case of contrary "he said," "she said" allegations, a reasonable juror could determine that the meaning of "fair" includes being provided more protections than Doe alleges he received.[10] *See, Doe v. Trustees of Boston College,* 892 F.3d at 86 (whether an outside communication breached a reasonable expectation that Board would meet in private was a dispute of material fact that a reasonable jury could resolve in favor of the plaintiffs).

Because the breach of contract claim survives the summary judgment phase, the count alleging a breach of the covenant of fair dealing does as well and summary judgment is denied on Counts I and II. *Doe v. Trustees of Boston College, supra* at 88.

## COUNT VI:  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

The parties do not disagree that Rhode Island law requires physical symptoms in order to maintain an action for negligent infliction of emotional distress. *Reilly v. United States,* 547 A.2d 894, 896 (R.I. 1988).  Doe offers no proof to support this component of his claim.

---

[10] For example, it appears that JWU put a significant burden on Doe to ascertain the details of the process, rather than provide him with a detailed description.  It gave him copies of the relevant policies and publications, it told him he could bring "relevant" materials and "witnesses with personal knowledge" and that the Director of Student Conduct was available to answer questions.  In a subsequent letter, Director Gray reiterated that he should contact her if he had any questions.  A reasonable jury could find that requiring Doe to discern what questions he should ask (e.g., could he propound written questions before Ms. Smith was interviewed by the panel or after she gave a statement; could he make an opening or closing statement, what would constitute "personal knowledge" by a witness, would a roommate sleeping in the room close to the bathroom who heard nothing be a witness "with personal knowledge," etc.), is unfair when students are strangers to such a process and rely entirely on what is told to them to  inform their understanding of what they are up against.  A reasonable juror could decide that it is not "fair" to require a student who knows little or nothing to figure out what s/he does not know in order to ask productive questions.

8

Therefore, there is no genuine issue of material fact and summary judgment in favor of JWU is appropriate and hereby granted on Count VI.

## FEDERAL CLAIM

## COUNT IV: TITLE IX

Doe maintains that his treatment at the hands of JWU constituted discrimination on the basis of gender in violation of 20 U.S.C. § 1681, known more familiarly as Title IX [of the Education Amendments of 1972]. "Title IX provides that '[n]o person in the United States shall, on the basis of sex ... be subjected to discrimination under any education program or activity receiving Federal financial assistance.'20 U.S.C. § 1681(a). This provision is enforceable 'through an implied private right of action.'" *Doe v. Trustees of Boston College,* 892 F.3d at 89-90 (citations omitted). University discipline violates Title IX when "gender is a motivating factor in the decision to discipline." *Yusuf v. Vassar College*, 35 F.3d 709, 715 (2d Cir. 1994).

For the purpose of reviewing Title IX discrimination claims, the First Circuit has adopted the framework of *Yusuf v. Vassar College, supra,* describing two categories of gender discrimination: "erroneous outcome" and "selective enforcement." *Yusuf* at 715, explicitly adopted by *Doe v. Trustees of Boston College,* 892 F.3d at 90. Although the approval by the First Circuit of the Second Circuit's formulation was predicated upon the agreement of the parties in *Trustees of Boston College*, the Circuit has since again applied the *Yusuf* framework. *Haidak v. University of Massachusetts-Amherst*, 933 F.3d 56, 74 (1st Cir. 2019).[11]

---

[11] Doe has suggested that I eschew *Yusef's* framework in favor of one recently articulated by the Seventh Circuit in *Doe v. Purdue University,* 928 F.3d 652 (7th Cir. 2019). As *Haidak* applied the *Yusuf* framework two months after *Doe v. Purdue University* was published, I decline that invitation.

Doe frames his complaint as one of "erroneous outcome," arguing that the adjudication by JWU that Doe was "responsible" on these facts and circumstances, as well as other factors,[12] was egregiously inaccurate. A plaintiff must, indeed, "offer evidence 'cast[ing] some articulable doubt on the accuracy of the outcome of the disciplinary proceeding," in order to prevail on an "erroneous outcome" theory. *Doe v. Trustees of Boston College,* 892 F.3d at 90.

A challenge, even if persuasive, to the integrity of the University's factfinding, however, is not sufficient: a plaintiff must also offer evidence to "show [that] gender bias was a motivating factor." *Id.* at 91, quoting *Yusef,* 35 F.3d at 715. Gender as a motivating factor supplies the causal connection between Title IX's prohibition and the injury to the plaintiff. *Doe v. Vanderbilt University,* No. 3:18-cv-00569, 2019 WL 4748310 at *7 (M.D. Tenn. Sept. 30, 2019). It is this obstacle that Doe fails to surmount. Absent some smoking gun,[13] which a single reference to Mary Smith as a [possible] "victim" is not, Doe must like others in his position rely on statistical evidence to raise an inference of gender bias as a *motivating* factor. Here, Doe points only to the fact that a relatively small number of students adjudicated were female: he acknowledged, however and JWU has demonstrated, that the vast majority of complainants are female and the minority male. The only way the ratio of adjudicated males to females would

---

[12] He complains of the nomenclature used by campus police during the investigative stage in referring to Mary Smith as a "victim"; and of an alleged over-reaction to what is known as the "Dear Colleague" letter from the Obama-era Department of Education which he believes caused the University to engage in a "witch-hunt against men;" and on a rate of adjudications showing that only 20% of the students charged with sexual assault have been female. These combined, he avers, create an inference of purposeful discrimination.

[13] *See, e.g., Doe v. Washington and Lee University,* No. 6:14-cv-00052, 2015 WL 4647996 at *10 (W.D. Va. Aug. 5, 2015) (finding as indicative of discriminatory motivation the fact that the University's Title IX Officer, who had "considerable influence" on the proceedings, had publicly endorsed an article positing that sexual assault occurs whenever a woman has consensual sex with a man and regrets it because she had internal reservations that she did not outwardly express," a scenario much like the facts at issue there.).

be probative of gender bias as a motivating factor is if Doe could point to a disparity between the number of males and females making accusations and those charged by the University; if, for example, the University prosecuted 95% of males who were accused but only 5% of females who were accused, that would raise at least a suspicion of purposeful bias on the part of the University. Doe lacks, however, the critical component of that statistical comparison because he has paid no attention to the breakdown of accusations. If the showing in *Haidak, supra* was insufficient to establish a causal connection despite the evidence there that of 93 men and 26 women who were the subject of hearings, all 13 of the ones expelled were male, it is surely insufficient here. *See also, Doe v. Trustees of Boston College,* 892 F.3d at 90 *(*statistical showing inadequate despite the fact that "between August 1, 2005 and July 1, 2015, only male students have been accused of sexual assault."). Moreover, as the Circuit noted in *Boston College*, the word "victim" is gender neutral; thus, the fact that the campus police referred to the accuser as a possible "victim" does not by itself indicate gender bias.

No matter how strong Doe's showing is that the verdict reached by JWU was factually wrong, that is not enough. JWU is entitled to summary judgment on Count IV.

**CONCLUSION**

The defendant's Motion for Summary Judgment is denied with respect to Counts I and II and granted with respect to Counts IV and VI.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge
11/26/19

11