UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOHN DOE,

            Plaintiff,

    v.

JOHNSON & WALES UNIVERSITY,

            Defendant.

C.A. NO.: 18-106-JJM-LDA

**DEFENDANT JOHNSON & WALES UNIVERSITY'S
MEMORANDUM IN SUPPORT OF
MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE,
CLARIFICATION**

JOHNSON & WALES UNIVERSITY
BY ITS ATTORNEYS,

STEVEN M. RICHARD (#4403)
JEFFREY S. BRENNER (#4359)
NIXON PEABODY LLP
ONE CITIZENS PLAZA, SUITE 500
PROVIDENCE, RI  02903
TEL: 401-454-1020
FAX: 401-454-1030
EMAIL:  srichard@nixonpeabody.com

JEREMY LICHT (#9518)
JOHNSON & WALES UNIVERSITY
8 ABBOTT PARK PLACE
PROVIDENCE, RI 02903
TEL: (401) 598-1027
FAX: (401) 598-2240
EMAIL: jeremy.licht@jwu.edu

December 20, 2019

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................... 1

SUMMARY OF THE ARGUMENT ............................................................................ 2

ARGUMENT ................................................................................................................. 4

I.    The Court Should Reconsider Its Order And Enter Summary Judgment In JWU's Favor. ..... 4

    A.    Applicable Law On "Reasonable Expectations" And "Fairness" Entitles JWU To Summary Judgment. ........................................................................................ 4

        1.    Binding First Circuit Precedent Holds That A Promise To Be Fair Does Not Create Additional Contractual Protections Under The "Reasonable Expectations" Test. . 4

        2.    Binding First Circuit Precedent Holds That A Promise To Be Fair Is Not Ambiguous But An Incorporation Of The Implied Covenant Of Good Faith And Fair Dealing. ........................................................................................... 8

        3.    Binding First Circuit Precedent Holds That A Court Cannot Create New Student Protections Without Support From State Legal Sources. .................................. 10

    B.    Doe's Contract Claims Fail Under The Proper Application Of First Circuit Precedent. ........................................................................................................... 10

II.   Fundamental Principles of Contract Law Foreclose The Conclusion That "Fair" Constitutes An Ambiguous Yet Enforceable Promise To Provide Additional Protections. ..................... 14

    A.    "Fair" Is Not Ambiguous Insofar As It Has The Same Meaning As The Implied Covenant. .......................................................................................................... 15

    B.    "Fair" Is Not Ambiguous As Used In The CRP. ........................................... 15

    C.    The Order's Construction Of "Fair" Leads To An Indefinite, Unenforceable Promise. 18

III.  Alternatively, The Court Should Grant Reconsideration To Clarify The Order. ................... 19

CONCLUSION .............................................................................................................. 19

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bleiler v. Coll. of Holy Cross*, 2013 WL 4714340 (D. Mass. Aug. 26, 2013).............................. 11

*Bliss Mine Rd. Condo. Ass'n v. Nationwide Prop. & Cas. Ins. Co.*, 11 A.3d 1078 (R.I. 2010)... 15

*Doe v. Brown Univ.*, 943 F.3d 61 (1st Cir. 2019) .................................................... 7, 10

*Doe v. Trustees of Boston College*, 892 F.3d 67 (1st Cir. 2018) .......................................... passim

*Doe v. Trustees of Boston College*, 942 F.3d 527 (1st Cir. 2019) ......................................... passim

*Fernandez-Vargas v. Pfizer*, 522 F.3d 55 (1st Cir. 2008)............................................... 1

*G. v. Fay Sch.*, 931 F.3d 1 (1st Cir. 2019) ............................................................. 5, 18

*Gorman v. St. Raphael Acad.*, 853 A.2d 28 (R.I. 2004) ................................................. 10

*Haviland v. Simmons*, 45 A.3d 1246 (R.I. 2012) ........................................................ 16

*Havlik v. Johnson & Wales Univ.*, 509 F.3d 25 (1st Cir. 2007) ........................................... passim

*Lincoln Nat. Life Ins. Co. v. Wilmington Tr. Co.*, 2013 WL 4042659 (D.R.I. Aug. 9, 2013) ........ 1

*Lyons v. Salve Regina Coll.*, 565 F.2d 200 (1st Cir. 1977)............................................... 7

*Mangla v. Brown Univ.*, 135 F.3d 80 (1st Cir. 1998) .......................................... 11, 12

*Miller v. Wells Fargo Bank, N.A.*, 160 A.3d 975 (R.I. 2017) ....................................... 15

*Paul v. Paul*, 986 A.2d 989 (R.I. 2010) ................................................................ 15

*Roe v. Ne. Univ.*, 2019 WL 1141291 (Mass. Super. Ct. Mar. 8, 2019) ....................................... 12

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 182 F.R.D. 386 (D.R.I. 1998)........................ 18

*Schaer v. Brandeis Univ.*, 735 N.E.2d 373 (Mass. 2000) ................................................ 7

**Rules**

34 C.F.R. § 668.46(k) ...................................................................... 16

34 C.F.R. § 668.46(k)(2)(i)................................................................. 16

34 C.F.R. § 668.46(k)(3)(i)(B)................................................................................................. 16, 17

4826-9363-3945.1

Defendant Johnson & Wales University ("JWU") respectfully moves for reconsideration or, in the alternative, clarification of the Court's Memorandum and Order of November 26, 2019 ("Order") insofar as it denied JWU's motion for summary judgment on Plaintiff John Doe's claims for breach of contract and the implied covenant of good faith and fair dealing (collectively, "contract claims"). JWU respectfully requests oral argument on its motion.

## INTRODUCTION

Doe claims JWU breached the terms of its Conduct Review Process ("CRP")[1] by not providing him various procedures during the student conduct proceeding that led to his expulsion for sexual assault. As the Order recognizes, Doe "acknowledges that the process [i.e., the CRP] does not explicitly give him any of the rights he alleges were denied him." Order at 6. Nonetheless, the Order denied JWU summary judgment on Doe's contract claims because the CRP uses the word "fair," which the Order determined is "ambiguous," such that "a reasonable juror could determine that the meaning of 'fair' includes being provided more protections than Doe alleges he received." *Id.* at 7-8. In other words, the Order determined that the word "fair" could be construed to add procedures into the conduct review process that the CRP itself "does not explicitly give." *Id.* at 6.

JWU recognizes that courts grant reconsideration "sparingly" and the applicable standard for reconsideration—"a manifest error of law"—sets a high bar. *Lincoln Nat. Life Ins. Co. v. Wilmington Tr. Co.*, 2013 WL 4042659, at *3 (D.R.I. Aug. 9, 2013) (internal quotations and citation omitted). Nonetheless, "a district court has the inherent power to reconsider its interlocutory orders, and [the First Circuit] encourage[s] it to do so where error is apparent." *Fernandez-Vargas v. Pfizer*, 522 F.3d 55, 61 n.2 (1st Cir. 2008). JWU submits that the Order's

---

[1] Exhibit C to the Declaration of Elizabeth (Betsy) Gray ("Gray Decl.") (Dkt. No. 51-2).

holding on Doe's contract claims meets the standard for reconsideration, with the unique circumstances here making reconsideration particularly appropriate.

**First**, the First Circuit decided *Doe v. Trustees of Boston College*, 942 F.3d 527 (1st Cir. 2019) (*Boston College II*)—binding precedent that forecloses the conclusion the Order reached— less than a week before the Order issued; indeed, the Order adopts the very argument *Boston College II* rejected.  **Second**, the Order is based on a theory (that the term "fair" is "ambiguous," Order at 6-8) that neither party advanced (or even mentioned).  Thus, the parties did not have the opportunity to brief a key precedent or the underpinnings of the Order, and the Court did not have the benefit of such briefing.[2]  JWU respectfully submits that an opportunity fully to address these matters would be beneficial not only to the Court and the parties but also other litigants who may be affected by this precedent.

## SUMMARY OF THE ARGUMENT

JWU respectfully contends that the following grounds warrant reconsideration:

**First**, *Boston College II* contains three express holdings that foreclose the Order's conclusion:

- A promise to provide a "fair" conduct review process does not create a "reasonable expectation" of or entitle a student to protections beyond those explicitly set forth in the student handbook.  *See* 942 F.3d at 533-34.

- A promise to provide a "fair" process merges into the implied covenant of good faith and fair dealing and promises nothing more than what the implied covenant already provides.  *See id.* at 534 n.6 (citing *Doe v. Trustees of Boston College*, 892 F.3d 67, 76, 88 (1st Cir. 2018) (*Boston College I*)).[3]

- Federal courts should not extend to students procedural protections not provided in a student handbook absent clear support from state laws.  *See Boston College II*, 942 F.3d at 533-536.

---

[2] JWU submitted a letter concerning *Boston College II*, but only on the afternoon before the Order was published, and the Order addressed the case only in a footnote.  Order at 7 n.9.

[3] In *Boston College I*, the handbook expressly promised "fundamental fairness" as well as a "fair procedure which [was] appropriate to the circumstances."  892 F.3d at 76, 87.

Applying these principles, the First Circuit concluded that, notwithstanding an explicit promise of a "fair procedure" or "fairness," the student handbook could not be construed to provide additional protections that neither the handbook nor existing state law expressly provided. The Order's conclusion that the CRP's use of the word "fair" could create protections the CRP does not expressly provide conflicts with *Boston College II*.

Upon reconsideration, the Court should analyze Doe's contract claims under the framework of *Boston College II*. Applied in this case, that framework requires entry of summary judgment in JWU's favor, because the additional protections Doe has identified conflict with or are absent from the CRP and are unsupported by any existing Rhode Island law.

**Second,** the Order's conclusion that the term "fair" is ambiguous deviates from First Circuit precedent and well-established contract interpretation principles for the following reasons:

- Given the First Circuit's holding that the promise to be fair in a student handbook merges into the implied covenant of good faith and fair dealing, *see Boston College II*, 942 F.3d at 534 n.6; *Boston College I*, 892 F.3d at 87-88, "fair" cannot be deemed ambiguous.

- Even setting aside this specific definition, the term "fair" cannot be read as ambiguous in context, in light of the contract as a whole, which is how applicable precedent requires contract provisions to be construed. "Fair," used twice, respectively (1) describes **how** JWU will administer its express procedures and (2) following federal regulations nearly verbatim, describes **how** JWU complies with those federal regulations. "Fair" does not describe **what** protections JWU will provide and is therefore not susceptible of the meaning the Order ascribes to it— i.e., that it can be construed to require protections the CRP does not explicitly give.

- Alternatively, if "fair" can mean, as the Order held, that the CRP requires undefined, unspecified protections, then there can be no binding contractual promise. An unfettered promise to be "fair" would be too vague and indefinite to enforce, and no jury could reasonably determine that the parties had a meeting of the minds on what the term meant or means.

Upon reconsideration, the Court should assess the contract law claims in light of these principles. Applied in this case, that approach requires entry of summary judgment in JWU's favor

because "fair" cannot be read as "ambiguous" or, even if it could, as providing protections beyond those the CRP expressly sets forth.

Finally, in the alternative, at minimum, the Court should clarify which of the multiple additional protections that Doe identifies remain viable as part of his contract claims. This clarification is necessary to enable JWU to prepare for trial as the Court has not yet specified which additional protections fall within its interpretation of "fair."

## ARGUMENT

**I.     The Court Should Reconsider Its Order And Enter Summary Judgment In JWU's Favor.**

**A.     Applicable Law On "Reasonable Expectations" And "Fairness" Entitles JWU To Summary Judgment.**

Binding First Circuit precedent on the "reasonable expectations" test and the construction of "fair" provides three grounds for reconsideration and entry of summary judgment in JWU's favor.

**1.     Binding First Circuit Precedent Holds That A Promise To Be Fair Does Not Create Additional Contractual Protections Under The "Reasonable Expectations" Test.**

**First**, *Boston College II* forecloses the conclusion that, under the "reasonable expectations" test, a promise to be "fair" can contain protections the student handbook does not explicitly give. In *Boston College II*, the First Circuit construed a student handbook that included an express promise to assure "fundamental fairness." 942 F.3d at 534 n.6. The First Circuit's holding establishes that the specific procedures of the student handbook, not its general promise of fairness, determine what procedural protections a school is required to provide under the reasonable expectations test. Addressing the plaintiff's argument that he was entitled to cross-examine witnesses, the First Circuit stated:

4

> We reject Doe's argument that his reasonable expectations arising from the contract were that he would be given the opportunity to engage in quasi-cross-examination of Roe in real time. **Nothing in the contract provides any basis for the expectation. Indeed, the contract procedures explicitly do not provide for any such opportunity**. Given the Policy's plain description of BC's investigation process, Doe could not have reasonably expected to be allowed quasi-cross-examination in real time.

*Id.* at 533 (emphases added).   Notably, the plaintiff advanced an argument analogous to the reasoning of the Order: he claimed a right to cross-examination because "BC's contractually binding promise of 'fundamental fairness' *does* have meaning beyond simply following BC's existing procedures," and "under that test, BC failed to meet Doe's reasonable expectation that he would be afforded a fundamentally fair process" because it denied him cross-examination rights.[4] Despite that argument and explicitly noting the contract's promise of "fundamental fairness," *id.* at 534 n.6, the First Circuit held: "**Nothing** in the contract provides any basis for the expectation [of cross-examination]. Indeed, the contract procedures **explicitly do not provide** for any such opportunity," *id.* at 533 (emphases added).   In other words, the promise of "fundamental fairness" does not provide "any basis" for the student's expectation for a procedure that is not made explicit in the handbook.   *Id.* at 533, 534 n.6; *accord G. v. Fay Sch.*, 931 F.3d 1, 12 (1st Cir. 2019) ("distinguishing well-defined procedures and policies [in a student handbook], which can form contractual promises, from generalized representations, which cannot" (internal quotations omitted)).

The First Circuit in *Boston College I* reached a similar conclusion.   There, the student handbook explicitly promised a "fair procedure which [was] appropriate to the circumstances." 892 F.3d at 76.   The plaintiff argued Boston College "breached the terms of [its] contractual agreement and **the fundamental fairness guarantees … to students facing disciplinary**

---

[4] Brief of John Doe, *Doe v. Trustees of Boston College*, 2019 WL 5587068, at \*27-\*29 (1st Cir. Oct. 23, 2019).

**procedures**" by, *inter alia*, failing to: conduct a threshold evaluation of the complaint with the plaintiff before referring the matter to a disciplinary hearing; have the college police conduct the investigation; and delay the hearing pending the resolution of a related criminal investigation.  *Id.* at 80-83 (emphasis added and footnote omitted).  Analyzing the specific language of the student handbook, the First Circuit made clear that a promise of a "fair procedure" does not create a reasonable expectation of receiving procedural protections contrary to or absent from the student handbook.  In rejecting the argument that Boston College breached the handbook by failing to stay the hearing, the First Circuit illustrated the point:

> One more time the Student Guide's language is dispositive. In relevant part … the Student Guide provides that when a complaint is filed '[t]he University will promptly conduct an investigation of the alleged incident ... [and] make every reasonable effort to resolve the complaint within [sixty] days.' Therefore, a student facing a complaint could reasonably expect that any disciplinary hearing would take place within those sixty days. And this reasonable expectation **is not truncated by B.C.'s other contractual obligations to provide due process and fundamental fairness**….

*Id.* at 83 (emphasis added); *see id.* at 81 (holding that because handbook did not require a threshold evaluation, "under the standard of reasonable expectations, it does not create a reasonable expectation on any reader that a threshold evaluation would be required"); *id.* at 82 (holding that because handbook did not require college police to conduct the investigation, "the Student Guide could not raise a reasonable expectation to a student" that the college police would conduct the investigation).

The Order appeared to distinguish *Boston College II* on three grounds, but these reasons warrant no departure from *Boston College II* (or *Boston College I*, for that matter).[5]

---

[5] The Order did not attempt to distinguish *Boston College I* and appeared to rely on it in part.  Order at 4, 8.

**First**, the Order noted (p. 7 n.9) that *Boston College II* arose under Massachusetts law. That *Boston College II* (and *Boston College I*) arise under Massachusetts law, and not Rhode Island law, is immaterial. As the First Circuit itself has indicated, the Massachusetts "reasonable expectations" test is no different than the Rhode Island one: Massachusetts employs "a reasonable expectations standard" that asks "what meaning the party making the manifestation, the university, should reasonably expect the other party, the student, to give it." *Boston College I*, 892 F.3d at 80 (citations and brackets omitted). Rhode Island law does the same, interpreting a student handbook "in accordance with the parties' reasonable expectations, giving those terms the meaning that the university reasonably should expect the student to take from them." *Doe v. Brown Univ.*, 943 F.3d 61, 67 (1st Cir. 2019). The First Circuit has relied on cases construing Massachusetts law when applying the reasonable expectations test under Rhode Island law, and vice versa. *See, e.g.*, *Havlik v. Johnson & Wales Univ.*, 509 F.3d 25, 35 (1st Cir. 2007) (citing Massachusetts law, including *Schaer v. Brandeis Univ.*, 735 N.E.2d 373 (Mass. 2000), the same case *Boston College II*, 942 F.3d at 533, cites, in construing a student handbook under Rhode Island law); *Boston College I,* 892 F.3d at 80 (citing *Lyons v. Salve Regina Coll.*, 565 F.2d 200, 202 (1st Cir. 1977) (construing Rhode Island law), in setting forth reasonable expectations test under Massachusetts law). Nor did the Order cite a single Rhode Island case identifying a material legal difference from Massachusetts law on the reasonable expectations test.[6] Indeed, even Doe contends that *Boston College I* establishes the applicable test.[7] Thus, there is no basis to depart from the binding precedent of *Boston College I* and *Boston College II* in applying the reasonable expectations test.

---

[6] The "reasonable expectations" test in both Massachusetts and Rhode Island appears to originate in the First Circuit's decision under Rhode Island law in *Lyons v. Salve Regina College*, which the Massachusetts Supreme Judicial Court later adopted in *Schaer*, 735 N.E.2d at 378 (adopting "reasonable expectations" test as set forth in First Circuit cases, beginning with *Lyons*).

[7] Pl.'s Verified Opp. to Def.'s Mot. for Summary Judgment (Dkt. No. 62) ("Opp") at 20.

7

**Second**, the Order noted (p. 7 n.9) that "Massachusetts had a well-developed and extensive body of law defining the meaning of 'fundamental fairness' in school disciplinary cases." However, the law on fairness that *Boston College II* addresses was the case law applying the concept of "basic fairness," which the First Circuit noted is a **separate test** from the "reasonable expectations" test. *See Boston College II*, 942 F.3d at 533 (describing and analyzing separately the "reasonable expectations" test and the "basic fairness" test). As a matter of "reasonable expectations," *Boston College II* held that, notwithstanding a promise to be fair, a student "could not have reasonably expected" to receive a procedural protection when "[n]othing in the contract provides any basis for the expectation." *Id.*

**Third**, the Order (p. 7 n.9) noted that *Boston College II* arose on an appeal from a preliminary injunction. Yet the First Circuit rejected the plaintiff's argument for breach of contract as a matter of law, relying on the absence of language in the student handbook offering the protection the student sought. *See* 942 F.3d at 533. Nothing indicates the holding on the reasonable expectations standard is anything other than definitive. Moreover, *Boston College I* likewise held that a promise to be "fair" does not import new procedural protections into the handbook, and that case arose on an appeal from summary judgment. *See* 892 F.3d at 79.

For the foregoing reasons, JWU respectfully submits the application of the "reasonable expectations" test in *Boston College II* and *Boston College I* controls the issue before the Court, and reconsideration is warranted to apply the holdings of those cases to Doe's contract claims.

> **2.** **Binding First Circuit Precedent Holds That A Promise To Be Fair Is Not Ambiguous But An Incorporation Of The Implied Covenant Of Good Faith And Fair Dealing.**

**Second**, *Boston College I* and *Boston College II* also foreclose the conclusion that the word "fair" as used in a student handbook is ambiguous.[8]  Although confronted with (materially) the same term as this Court, neither *Boston College I* nor *Boston College II* deemed the promises of a "fair procedure" or "fundamental fairness," respectively, to be ambiguous.  Instead, *Boston College I* equated the express promise of fairness with the implied covenant of good faith and fair dealing or, as applied in the context of school disciplinary proceedings, a "duty to provide basic fairness."  892 F.3d at 87; *see id.* at 88.  The First Circuit explained that "whenever a school expressly promises no less than basic fairness, which is the case here, the school's implied duty becomes superfluous and the court's analysis to ensure that the disciplinary proceedings were conducted with basic fairness, focuses on assuring compliance with the express contractual promise."  892 F.3d at 88 (citation and quotations omitted); *accord Boston College II*, 942 F.3d at 534 n.6 (reaffirming and quoting *Boston College I*'s holding that "'whenever a school expressly promises no less than basic fairness,'" "'the school's implied duty [of basic fairness] becomes superfluous and the court's analysis to ensure that the disciplinary proceedings were 'conducted with basic fairness' focuses on assuring compliance with the express contractual promise'").  In other words, a promise to be fair in the educational context is not an ambiguous term that could import new substantive protections into the contract.  It simply restates the implied duty of good faith and fair dealing.  That duty applies under Rhode Island law as well, *see Havlik*, 509 F.3d at 35, and does not render the CRP ambiguous, any more than the implied covenant of good faith and fair dealing rendered ambiguous the student handbook in *Havlik*, *Boston College I*, and *Boston College II*.

---

[8] The Order did not cite a single precedent construing the term "fair" in a student handbook as creating ambiguity, much less of allowing the potential for adding non-existent terms to the student handbook.

**3.     Binding First Circuit Precedent Holds That A Court Cannot Create New Student Protections Without Support From State Legal Sources.**

**Third**, *Boston College II* holds that federal courts cannot extend to students protections not found in the student handbook absent an existing, explicit state law basis to do so. The First Circuit explained that "[f]ederal courts are not free to extend the reach of state law" to impose new requirements on school disciplinary processes. 942 F.3d at 535. That restraint is particularly important where state law affords deference to private academic institutions' choices on student discipline. *Id.*

The Order, however, construes the word "fair" to create "more protections" than what the CRP provides without any basis in Rhode Island law for doing so. Order at 7-8. No Rhode Island statute, rule, or case provides that the term "fair" (or any similar language) can be construed to expand or add to the express contractual protections governing a student disciplinary process. Moreover, Rhode Island law—like Massachusetts law—requires student handbooks to be construed to afford private schools "broad discretion" in disciplinary proceedings. *Brown Univ.*, 943 F.3d at 67 (quoting *Gorman v. St. Raphael Acad.*, 853 A.2d 28, 34 (R.I. 2004)); *see Havlik*, 509 F.3d at 35 (explaining that, under Rhode Island law, "courts must accord a school some measure of deference in matters of discipline") (citing *Gorman*, 853 A.2d at 34)). Under *Boston College II*, the absence of the protections from the CRP and from existing Rhode Island law forecloses extending additional protections to Doe, and thus requires rejection of his contract claims.

**B.     Doe's Contract Claims Fail Under The Proper Application Of First Circuit Precedent.**

As set forth above, under the "reasonable expectations" standard as applied in *Boston College II* and *Boston College I*, the word "fair" cannot serve as a source of additional procedures not found in the CRP. Accordingly, the viability of Doe's contract claims requires assessing his

alleged procedural deficiencies against the specific language of the student handbook.  So assessed,

it is clear that Doe's contract claims fail as a matter of law because the student handbook nowhere

supplies, and at times conflicts with, the procedures he seeks:

- Doe claims he "was never given a copy of what was an 18-page statement by [Mary] Smith." Order at 3.
  - JWU presumes the Order is referring to the Unusual Incident Report ("UIR"), as there is no 18-page statement by Smith.[9]  The CRP does not provide that the student will receive a copy of the UIR.  The CRP states that a "student will receive a notification describing the alleged violation."  CRP at 14.  It is undisputed that that occurred here, as Doe received a letter delineating the charges,[10] and had the entire UIR read to him with an opportunity to take notes, *see* Order at 3.  Moreover, the CRP specifically states that students "have the right to access their education records under certain conditions" and directs students to consult JWU's policy under the Family Educational Rights and Privacy Act (FERPA) for information on how to access these records.  CRP at 14.  FERPA gives students a right to inspect their educational records, not a right to a copy of them.  *See* 34 C.F.R. § 99.10(a), (d).  In light of the CRP's omission of any promise to provide a copy of the complaint and its reference to FERPA, Doe could not reasonably expect to receive a copy of the complaint.  *Cf. Bleiler v. Coll. of Holy Cross*, 2013 WL 4714340, at *15 (D. Mass. Aug. 26, 2013) (student could not reasonably expect to be provided a copy of a recording of a hearing, even where the student handbook said one would be made and provided students a right to a "fair process," because the handbook did not offer that right).

- Doe claims "the process was not sufficiently explained to him, in that he was not told 'how and if he could question any witnesses, bring any witnesses, bring and/or submit any evidence, whether there would be opening statements or closing statements.'"  Order at 3.
  - The CRP says in two places that a student may "bring" to the hearing and "present" "relevant materials and witnesses."  CRP at 15, 17.  Under the "reasonable expectations" test, a student is presumed to know the contents of the handbook, so Doe cannot state a contract claim based on supposed ignorance of whether he could bring witnesses or evidence to the hearing.  *See Mangla v. Brown Univ.*, 135 F.3d 80, 83 (1st Cir. 1998) (university can reasonably expect students to be aware of policies in relevant contractual document).[11]

---

[9] Doe's summary judgment opposition referred to an "18+ page incident report/complaint." Opp. at 23.  This appears to be a reference to the UIR, which is not a statement by Smith, but a summary of the investigation.  It is 16 pages (some of which are only partial pages), and only approximately four pages are a statement from Smith about the incidents.  Doe's own statements, as well as those of his supposedly exculpatory witnesses, cover a roughly equivalent number of pages in the UIR.  *See* Exs. H, J, L, N, O, and P to Gray Decl. (Dkt. Nos. 52-3, 52-5, 52-7, 52-9, 52-10, 52-11).

[10] Ex. Q to Gray Decl. (Dkt. 52-12).

[11] Moreover, Doe admitted in his deposition that a university official told him to bring to the hearing social media evidence he had collected.  *See* Doe Dep. Tr. at 77:10-17 (Dkt. 50-1), attached as Ex. 1 to Johnson & Wales

- o Nowhere in the CRP does JWU promise to explain the process to him beyond the nine-page explanation in the CRP itself.  In fact, the CRP directs students to call Student Conduct at a specified phone number "[f]or questions regarding the Student Code of Conduct, the Conduct Review Process, or Sanctions."  CRP at 18.  JWU encouraged Doe to review the CRP when it notified him of the charges and of the hearing date,[12] and invited him to ask further questions multiple times.  Order at 3.  Although Doe claims he had unanswered questions about the process, JWU can reasonably expect Doe to be aware of the CRP's description of the process and its instruction to call Student Conduct with questions about that process.  *See Mangla*, 135 F.3d at 83.

- Doe claims "he was not allowed to question [Smith] or any witnesses."  Order at 3.  He also claims he was not allowed to question Smith's advisor, B.K.[13]
  - o The CRP nowhere specifies that respondents or complainants are entitled to question witnesses, advisors, or anyone else involved in the proceeding.  So Doe could not have reasonably expected that opportunity.  *See Boston College II*, 942 F.3d at 533 (rejecting plaintiff's claim to right to cross-examination where "[n]othing in the contract provides any basis for that expectation").

- Doe complains "the standard of proof was preponderance of the evidence," and that is "too low."  Order at 4 & n.5.
  - o As the Order notes (p. 4 n.5), the CRP adopts a preponderance standard, stating that "[h]earing officers and panels use the 'more likely than not' standard to evaluate alleged violations."  CRP at 15.  No reasonable juror could conclude that Doe could have a reasonable expectation of a standard beyond a preponderance when the CRP explicitly enshrines the preponderance standard.

- Doe complains that "the hearing was not transcribed, and no other record was made of it."  Order at 4.
  - o The CRP nowhere mentions transcribing the hearing.  The CRP states only that a student will receive information on the outcome, CRP at 15, 17, which is the only reference to a written documentation of the hearing.  And that is what happened in this case: Doe received a letter explaining the panel's reason for its decision, in accordance with the CRP.[14]  In light of the absence of any CRP reference to a transcript, recording, or further record of the proceeding, Doe could not have reasonably expected one would be made.  *Cf. Roe v. Ne. Univ.*, 2019 WL 1141291, at *15 (Mass. Super. Ct. Mar. 8, 2019) (fairness did not require university to maintain a record of the hearing because plaintiff had her own first-hand knowledge of the hearing by actively participating in it).

---

University's Local Rule 56(a) Statement of Undisputed Facts in Support of its Motion for Summary Judgment (SUF) at ¶¶ 136-37.
[12] Ex. Q to Gray Decl. (Dkt. No. 52-12); Ex. S to Gray Decl. (Dkt. No. 52-14).
[13] Opp. at 23.
[14] Ex. V to Gray Decl. (Dkt. No. 52-16).

- Doe claims "his appeal should have been granted because there was new evidence of a post-incident Instagram posting by Smith."  Order at 4.
    - The CRP expressly states that an appeal may only be granted if "[r]elevant, new information has come to light since the decision was made."  CRP at 16.  It is undisputed that the Instagram post was made on December 10, 2016, and was accessible to Doe before the hearing on October 20, 2017.[15]
    - Moreover, Doe knew that social media evidence could be relevant before the hearing, as he admitted in his deposition to bringing social media evidence to show university personnel at his pre-hearing conference.[16]  No reasonable juror could conclude that Doe could reasonably expect "new information" that "has come to light since the decision was made" to include information that Doe had ready access to before the hearing.[17]

- Doe claims that JWU "conducted its disciplinary procedures in a gender discriminatory way."  Order at 4.  Insofar as this is a summary of Doe's Title IX theory, it is irrelevant to his contract claim; if it were relevant, it would fail for the same reasons as Doe's Title IX claim.  Insofar as this is a summary of a contract argument, JWU assumes the Order refers here to Doe's argument that the "burden was all on him and that burden shift was in violation of the CRP" because Smith "never had to provide evidence that the events actually occurred."[18]
    - Doe's claim is a misstatement of the record; there was evidence that the events actually occurred, namely, Smith's testimony before the panel.[19]  There is no actual dispute on that point.  Instead, Doe seems to be arguing that JWU should have required more evidence than Smith's own testimony to find Doe responsible.  But the CRP nowhere suggests a student cannot be found responsible for sexual assault based solely on the testimony of the complainant (and, indeed, in many such cases the only witnesses are the complainant and the respondent).  Doe could not reasonably expect that some additional standard of evidence would be required when none is mentioned in the CRP.

- Doe claims JWU should have provided him with the identities of the panelists before the hearing and the content of the training they received.[20]
    - Nothing in the CRP mentions that a student will be entitled to this information.  Accordingly, Doe could not reasonably expect to receive it.

- Doe claims JWU should have permitted his advisor to participate in the hearing.[21]
    - The CRP, however, clearly states that "[t]he advisor may accompany the student, but may not participate in any manner."  CRP at 17.  Doe could not reasonably

---

[15] SUF at ¶¶ 136-37 (Dkt. No. 49); Doe Dep. Tr. at 137:2-19 (Dkt. No. 51-1).
[16] Doe Dep. Tr. at 77:10-17 (Dkt. No. 51-1).
[17] SUF at ¶¶ 136-37 (Dkt. No. 49).
[18] Opp. at 25.
[19] SUF at ¶¶ 112, 114-15, 119 (Dkt. No. 49).
[20] Opp. at 24.
[21] Opp. at 22.

expect that his advisor should have been able to participate in the hearing when the CRP specifically said the advisor could not.

In sum, Doe could not have reasonably expected any of the additional protections he claims JWU should have provided him.

Moreover, Doe has presented no evidence of the kind that could support a claim for breach of the implied covenant of good faith and fair dealing, such as evidence that JWU "ignored promised protections, improperly consulted certain proof, acted arbitrarily in carrying out the procedures limned [i.e., described] in the handbook, or made [its] decision in bad faith."  *Havlik*, 509 F.3d at 36 (rejecting claim for breach of the implied covenant of good faith and fair dealing against JWU).

For all of these reasons, the Court should grant reconsideration; apply the "reasonable expectations" standard and construe "fair" in a manner consistent with First Circuit precedent; and grant summary judgment to JWU on Doe's contract claims.

## II.   Fundamental Principles of Contract Law Foreclose The Conclusion That "Fair" Constitutes An Ambiguous Yet Enforceable Promise To Provide Additional Protections.

The Order rests its decision on the premise that the word "fair" is ambiguous.  Because neither party addressed (or even mentioned) the argument, the Court did not have the benefit of any briefing on it.[22]  However, fundamental contract law principles are necessary for a complete analysis of whether "fair" is an ambiguous term.  The Court should grant reconsideration to apply these principles and enter summary judgment in JWU's favor for three independent reasons.

---

[22] In *Gorman*, the Rhode Island Supreme Court explained that "strict adherence to contract law" is not required in the student handbook context and that courts "must construe them in a manner that leaves the school administration broad discretion to meet its educational and doctrinal responsibilities."  853 A.2d at 34.  Accordingly, JWU does not concede that the traditional contract doctrine and cases applying it that the Order relied upon are consistent with the rules of construction set forth in *Gorman* or the First Circuit's application of the "reasonable expectations" standard.  JWU reserves the right to argue that the doctrinal framework employed in the Order is inapplicable in subsequent proceedings in this case, e.g., for purposes of the jury charge or on appeal.

A.    **"Fair" Is Not Ambiguous Insofar As It Has The Same Meaning As The Implied Covenant.**

**First**, "fair" cannot be deemed ambiguous under *Boston College I* and *Boston College II*. *Boston College I* expressly held that the duty of basic fairness is only a restatement of the implied covenant of good faith and fair dealing. *See supra* I.A.2. *Boston College II* reaffirmed this holding. *See id*. And as a matter of law, "[t]he implied covenant cannot create rights and duties not otherwise provided for in the existing contractual relationship." *Miller v. Wells Fargo Bank, N.A.*, 160 A.3d 975, 981 (R.I. 2017) (quotations and citation omitted). Insofar as the conduct procedures are concerned, under Rhode Island law, the implied covenant means JWU must provide the "promised protections" from the student handbook and not "act[] arbitrarily in carrying out the procedures limned [i.e., described] in the handbook." *Havlik*, 509 F.3d at 36. It does not mean a student is entitled to "more" undefined, unspecified protections. And the concept is no more ambiguous than it was in *Havlik*, *Boston College I*, and *Boston College II*.

B.    **"Fair" Is Not Ambiguous As Used In The CRP.**

**Second**, and independently, read in context, as it must be, "fair" is not ambiguous. In determining whether an ambiguity exists, courts "view the agreement in its entirety and give to its language its plain, ordinary and usual meaning." *Paul v. Paul*, 986 A.2d 989, 993 (R.I. 2010) (quotations and citation omitted). A court "does not establish ambiguity by viewing a word in isolation or by taking a phrase out of context." *Bliss Mine Rd. Condo. Ass'n v. Nationwide Prop. & Cas. Ins. Co.*, 11 A.3d 1078, 1083 (R.I. 2010) (quotations and citation omitted); *accord Boston College I*, 892 F.3d at 81. And a court "cannot consider the subjective intent of the parties[] but rather must consider the intent expressed by the language of the contract." *Bliss Mine Rd. Condo. Ass'n*, 11 A.3d at 1083-84. Finally, courts will not find ambiguity unless the term at issue is "reasonably and clearly susceptible of more than one interpretation." *Haviland v. Simmons*, 45

15

A.3d 1246, 1258 (R.I. 2012) (quotations and citation omitted). Thus, if a party cannot show a term as used in the contract is "reasonably and clearly susceptible of" his proposed construction, *id.* at 1258, it is immaterial that the term may be ambiguous in an abstract sense or that the party has a different subjective intent about what the term should mean.

Under this framework, "fair," which appears twice in the CRP, is not "reasonably and clearly susceptible of" an interpretation that it imports new protections into the CRP that are not mentioned in the CRP.

**First**, the CRP states: "The University administers the Conduct Review Process in good faith, making every reasonable effort to be fair to all involved." CRP at 13. Here, the word "fair" refers to the conduct review process described over nine pages of the CRP. Thus, it describes **how** JWU administers the **existing** protections specified in the CRP (consistent with the implied covenant of good faith and fair dealing). It does not define **what** protections JWU will provide or suggest **non-existing** protections may be added to the process.

**Second**, the CRP vests parties with the "right to an investigation and resolution that is prompt, fair and impartial from the initial investigation to the final result as required by applicable law." CRP at 17. Here, the right to a fair process is limited by the modifying phrase "as required by applicable law," namely the federal regulations that govern "[p]rocedures for institutional disciplinary action in [Title IX] cases." 34 C.F.R. § 668.46(k). Indeed, the CRP's wording follows nearly verbatim those regulations, which require a written policy for proceedings, including "a prompt, fair, and impartial process from the initial investigation to the final result." *Id.* § 668.46(k)(2)(i). The regulations define what a "prompt, fair, and impartial" proceeding is and note that this phrase means, among other things, that the proceeding is "[c]onducted in a manner that … (1) is consistent with the institution's policies." *Id.* § 668.46(k)(3)(i)(B). The regulation

does not require any of the procedures that Doe claims were lacking. *See id.* Far from importing new procedures not mentioned in the CRP, this second usage of the word "fair" refers directly to the specific legal standards that define a fair proceeding and that apply to school disciplinary procedures involving sexual violence (again consistent with the implied covenant of good faith and fair dealing). It is no more ambiguous than the regulatory term itself.

Both uses of "fair" must also be considered in light of the nine-page section of the student handbook describing the Conduct Review Process. Those pages begin by explaining that the Conduct Review Process provides "procedures for determining whether a student is responsible or not responsible for a violation of the Student Code of Conduct." CRP at 13. The student handbook specifies numerous aspects of the procedures, including (but in no way limited to):

- the preparation of an incident report upon report of a violation;
- the role of Campus Safety & Security in investigating violations;
- the initial intake of violations by Student Conduct;
- the types of hearings and the manner in which JWU decides the type of hearing that will apply to a particular violation;
- the training that hearing panelists will receive;
- the notification procedures students receive;
- students' rights to bring material and witnesses to hearings;
- students' rights to an advisor;
- the limitation on the advisor's role in the proceedings;
- the consequences for failing to attend a hearing;
- who is permitted to attend a hearing;
- the evidence that the hearing panel may consider;
- the findings that a hearing panel may make;
- the evidentiary standard the hearing panel uses;
- the process for determining sanctions and the definitions of all relevant sanctions;
- the process for informing students of the outcome of the decision;
- how students can ask questions about the process;
- how a student can admit responsibility and the effect of an admission on appeal rights;
- the timing and grounds for appealing a decision;
- student's rights to access their records under the Family Educational Rights and Privacy Act;
- the extent to which prior conduct violations will be considered; and
- student obligations to participate in proceedings.

*See* CRP at 13-21.

No reasonable reader of the student handbook could have concluded JWU went to the trouble of describing so many aspects of the Conduct Review Process only to create an open-ended commitment to "more" undefined, unspecified protections—that potentially could contradict the defined, specified procedures—through two uses of the word "fair." Thus, even if "fair" were susceptible of multiple meanings, it would not be susceptible of that one. Consequently, any purported alternative meaning to the one JWU articulated would be immaterial—in the same way it would not matter if one party argued a term meant "red," but it could only be "reasonably and clearly" construed to mean "black" or "white."

### C. The Order's Construction Of "Fair" Leads To An Indefinite, Unenforceable Promise.

**Third** and independently, if the word "fair" embeds a supposed promise to provide "more protections" than those specified in the CRP, as the Order concludes, then this promise is unenforceable as a matter of law. "Definiteness is an important characteristic of a binding contract because a court can only enforce an agreement if it can specify the obligations undertaken by the parties. A court asked to declare a contract binding must determine that the contract is definite enough that the court can be 'reasonably certain' of the scope of each party's duties." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 182 F.R.D. 386, 395 (D.R.I. 1998) (quotations and citation omitted). Applying that principle in the context of a student handbook, the First Circuit has held that "[v]ague and generalized representations are not contractually enforceable" because these "sort of generalized, aspirational statements [] are insufficiently definite to form a contract." *Fay Sch.*, 931 F.3d at 12. The word "fair" is not definite enough to enable any party or fact-finder to be "reasonably certain" of what additional protections the CRP requires JWU to provide. *Ross-Simons of Warwick, Inc.*, 182 F.R.D. at 395.

18

### III. Alternatively, The Court Should Grant Reconsideration To Clarify The Order.

If the Court declines to reconsider the Order and grant summary judgment in JWU's favor, it should alternatively grant reconsideration to clarify which protections, other than those the CRP expressly identifies, are encompassed within the term "fair." The Order holds that a jury could conclude that Doe can receive "more protections" than he alleges he received. Order at 8. But the Order does not specify whether that means all of the additional protections he seeks, or only some of them. JWU submits that addressing each of Doe's claimed procedures under the "reasonable expectations" standard is the proper approach. *See, e.g.*, *Boston College I*, 892 F.3d at 80-85 (addressing specific procedural deficiencies individually to determine which survive summary judgment and which do not). At the least, the Court should address the matter under the "ambiguity" approach in the Order and specify what protection purportedly may come within the CRP and to the jury's consideration.

### CONCLUSION

JWU requests that the Court reconsider the Order and enter summary judgment in favor of JWU on Doe's contract claims. Alternatively, the Court should clarify the Order by identifying which additional protections the term "fair" purportedly imports into the CRP.

JOHNSON & WALES UNIVERSITY
By its Attorneys,

_____/s/ Jeremy Licht_____
Jeremy Licht (#9518)
Johnson & Wales University
8 Abbott Park Place
Providence, RI 02903
Tel: (401) 598-1027
Fax: (401) 598-2240
jeremy.licht@jwu.edu

_____/s/ Steven M.  Richard_____
Steven M. Richard (#4403)
Jeffrey S. Brenner (#4539)

19

Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI  02903
Tel: (401) 454-1020
Fax: (401) 454-1030
srichard@nixonpeabody.com

Dated:  December 20, 2019

CERTIFICATE OF SERVICE

I certify that on the 20th day of December 2019, I filed and served this memorandum via the Court's CM/ECF system.

_____/s/ Steven M.  Richard_____